COMMONWEALTH of Kentucky,
Appellant

v.

Russell Tim PRIDHAM, Jr., Appellee.

and

Jason Cox, Appellant

v.

Commonwealth of Kentucky, Appellee.

Nos. 2011–SC–000126–DG,
2010–SC–000733–DG.

Supreme Court of Kentucky.

Oct. 25, 2012.

Rehearing Denied April 25, 2013.

Jack Conway, Attorney General of Kentucky, Bryan Darwin Morrow, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Meggan Elizabeth Smith, Assistant Public Advocate, Department of Public Advocacy, LaGrange, KY, Counsel for Appellant.

Douglas Patrick Vowels, Brandenburg, KY, Jack Conway, Attorney General, James Coleman Shackelford, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That constitutional guarantee extends to defendants who are contemplating guilty pleas. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), the Supreme Court recently held that that guarantee is breached when defense counsel fails to advise his or her noncitizen client that a contemplated guilty plea will subject the client to automatic deportation. Is the guarantee likewise breached when counsel fails to advise her client that the crime to which he is pleading guilty will automatically render him subject to a longer period of parole ineligibility under Kentucky Revised Statute (KRS) 439.3401, the violent offender statute? Is it breached when counsel advises his client of the mandatory sex offender treatment applicable to the crime to which he is pleading but fails to advise him of the effects of that program on parole eligibility? Panels of the Court of Appeals answered "yes" to the first question and "no" to the second. We granted discretionary review in the two cases—*Commonwealth v. Pridham,* 2011–SC–000126, and *Cox v. Commonwealth,* 2010–SC–000733–to consider the related questions together in light of *Padilla.* In both cases, we affirm.

### RELEVANT FACTS

*Commonwealth v. Pridham,* 2011–SC–000126–DG.

According to the Uniform Citation, in July 2006, in Elizabethtown, an officer of the Greater Hardin County Task Force, suspecting apparently that Timothy Pridham, a convicted methamphetamine manufacturer, had obtained pseudoephedrine—a methamphetamine precursor—stopped the vehicle in which the fifty-seven year old Pridham and three others were riding. He found in the passenger compartment a bag containing thirty pseudoephedrine-containing pills and in the trunk chemicals used in the "red phosphorus and iodine" method of methamphetamine manufacture.

See *Kotila v. Commonwealth*, 114 S.W.3d 226 (Ky.2003) (discussing three methods of manufacturing methamphetamine). Pridham confessed to the officer that he was on parole following his prior manufacturing conviction and that he was the "cook" in a new manufacturing operation. A subsequent search of Pridham's Shepherdsville residence produced other items used to manufacture methamphetamine, including isolated pseudoephedrine, muriatic acid, and starting fluid.

Based on this evidence, in August 2006 a Hardin County Grand Jury issued an indictment charging Pridham with manufacturing methamphetamine, second or subsequent offense, a class A felony (KRS 218A.1432); with complicity to commit unlawful distribution of a methamphetamine precursor, a class D felony (KRS 218A.1438); and, because one of the other passengers in the vehicle with Pridham when he was stopped was a minor, with fourth-degree controlled substance endangerment to a child, also a class D felony (KRS 218A.1444). The indictment further charged Pridham with being a first-degree persistent felony offender (KRS 532.080).

The matter came to trial in September 2007, but at the end of *voir dire*, before the jury had been chosen, Pridham informed the trial court that he was willing to accept the Commonwealth's offer of concurrent thirty, five, and five year sentences in exchange for his plea of guilty to all of the charges. The trial court then conducted a plea hearing pursuant to RCr 8.08 and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), at which Pridham at first complained that both the arresting officer and the Commonwealth had earlier held out hope of more lenient treatment. When the Commonwealth made clear, however, that it was not budging from the pending thirty-year offer, Pridham conceded that he was guilty and that his chances of acquittal at trial were slim to none. He acknowledged the constitutional rights he was waiving, expressed satisfaction with his counsel's representation, and pled guilty in accord with the Commonwealth's offer. The trial court accepted the plea, and by Judgment entered November 7, 2007, sentenced Pridham accordingly to thirty years in prison.

In September 2008, Pridham moved for relief from that Judgment pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42. His motion alleged that trial counsel assured him that he would become eligible for parole upon having served twenty percent (20%) of his thirty-year sentence, or six years,[1] whereas in fact KRS 439.3401, the "violent offender" statute, operates so as to render him ineligible for parole for twenty years, at which point Pridham would be seventy-seven years old.[2] Pridham maintained that counsel's incorrect advice fell below the Sixth Amendment standard of effectiveness recognized by the Supreme Court in *Strickland* and that had he been correctly advised he would not have accepted a plea "bargain" with virtually no benefit, but would instead have gone ahead with his trial.

---

1. See 501 KAR 1:030 § 3(*l*)(c) which provides that for felonies committed after December 3, 1980, the initial period of parole ineligibility for persons sentenced to terms of imprisonment of "2 years, up to and including 39 years [is] 20% of [the] sentence received."

2. KRS 439.3401 provides that "violent offenders" do not become eligible for parole until they have served eighty-five percent (85%) of their sentences or twenty years, whichever is less. *Hampton v. Commonwealth*, 133 S.W.3d 438 (Ky.2004) (citing *Hughes v. Commonwealth*, 87 S.W.3d 850 (Ky.2002)). The statute includes within the definition of "violent offender" "any person who has been convicted of or pled guilty to the commission of . . . [a] Class A felony," such as Pridham's second manufacturing methamphetamine offense.

The trial court, relying on this Court's opinion in *Commonwealth v. Padilla*, 253 S.W.3d 482 (Ky.2008), a case in which defense counsel erroneously assured his noncitizen client that a guilty plea to drug charges would have no bearing on his immigration status, denied Pridham's motion without a hearing. In *Padilla*, we reaffirmed prior cases to the effect that a defendant's misapprehension regarding the collateral consequences of a guilty plea, and hence counsel's misadvice regarding such consequences, does not invalidate the plea. Deeming parole eligibility a collateral consequence of Pridham's plea, the trial court found our opinion controlling.

Pridham appealed that ruling to the Court of Appeals, and while his case was pending, the United States Supreme Court issued its *Padilla* opinion, in which it reversed our decision and held that for noncitizens the deportation consequences of a criminal conviction are so severe, so penalty-like, and so intimately related to the criminal process as to make the collateral versus direct distinction upon which we had relied "ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation." 130 S.Ct. at 1482. The Court concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel," *id.*, and that under *Strickland*'s "objective standard of reasonableness," attorneys counseling defendants potentially at risk of deportation have an affirmative duty to apprise their clients of that risk: "When the [immigration] law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." 130 S.Ct. at 1483.

Likening the adverse parole consequences of Pridham's guilty plea to the deportation consequences at issue in *Padilla*, the Court of Appeals panel unanimously agreed that Pridham's RCr 11.42 motion alleged a *Strickland* violation and so remanded the matter to the trial court for a hearing to determine whether counsel had in fact misadvised Pridham as alleged, and if so whether the misadvice was reasonably likely to have induced Pridham's decision to forego a trial. We granted the Commonwealth's motion for discretionary review to consider its claim that the Court of Appeals read *Padilla* too broadly.

*Cox v. Commonwealth,* 2010–SC–000733–DG.

In late 1999, a Henry County Grand Jury issued an indictment against Jason Cox charging him with first-degree sodomy against a four-year-old child, a class A felony (KRS 510.070). Apparently, the charge stemmed from reports of sexual contact between Cox and his stepson. Cox denied the charge, and on more than one occasion rejected guilty plea offers from the Commonwealth. The matter was thus still outstanding in 2003 when Cox pled guilty in the Jefferson Circuit Court to unrelated charges of kidnapping, a class B felony (KRS 509.040) and second-degree robbery, a class C felony (KRS 515.030). For those offenses Cox was sentenced to concurrent terms of ten years' imprisonment.

At that point, it appears, the Commonwealth proposed to Cox's retained counsel a plea bargain meant to merge, as far as possible, the punishments for the Jefferson County and the Henry County offenses. To that end, counsel first recommended to Cox that he accept an offer whereby the Henry County charge would be amended to second-degree sodomy, a class C felony, and the recommended sentence would be

ten years to be served concurrently with the sentence from Jefferson County. As represented by counsel in a letter to Cox, the advantages of that deal were "that you will not get any time consecutive to your Jefferson County sentence. The amendment to Sodomy 2nd also takes the charge out of the violent offender statute that requires one to serve 85% of their sentence before they are eligible for parole." Under both sentences, counsel told Cox, he would be eligible for parole in two years.

Ultimately, the deal was made even better for Cox so as, apparently, to preserve or to enhance his eligibility for probation. To that end, the Commonwealth agreed to dismiss the 1999 sodomy indictment and to issue an information charging Cox with two counts of first-degree sexual abuse, a class D felony (KRS 510.110 (2002)).[3] The recommended sentence would remain ten years (five years on each count) to be served concurrently with the Jefferson County sentence, but the lesser felonies, the parties apparently believed, would give Cox a shot, or at least a better shot, at shock probation.

Cox accepted this deal, and on November 20, 2003 he appeared with counsel before the Henry Circuit Court, moved to enter the guilty plea, acknowledged his guilt, and acknowledged as well, as provided on the face of the plea agreement, that as a sexual offender he would be obliged to (1) submit to the sexual offender risk assessment mandated by KRS 439.265(6); (2) submit to testing for HIV (KRS 510.320) and DNA (KRS 17.170); (3) complete the sexual offender treatment program provided by the Department of Corrections pursuant to KRS 197.400 *et seq.*; and (4) register as a sexual offender upon completion of his sentence pursuant to KRS 17.495, *et seq.*

He also acknowledged that he would be subject to "conditional discharge for three years upon completion of incarceration or parole pursuant to KRS 532.043." The trial court accepted Cox's plea, but postponed sentencing pending Cox's sexual offender risk assessment.

In January 2004, before assessment and sentencing, Cox moved to withdraw his plea on the ground that he had not fully appreciated the many consequences of a sex offense conviction. By order entered March 25, 2004, the trial court, noting that the sex offense ramifications of Cox's plea were incorporated in the agreement and had been discussed during Cox's plea colloquy, summarily denied the motion. Cox thereupon dismissed his counsel and renewed his motion to withdraw his plea, this time alleging that the plea had been induced by counsel's ineffective assistance. In particular, Cox complained that while counsel had duly advised him that he would be required to complete a sex offender treatment program, counsel had failed to warn him that completion of the program was a condition of both parole eligibility (KRS 439.340(11)) and eligibility for good time credit (KRS 197.045(4)). For a host of reasons, Cox maintained, ranging from limited spaces in the program to the program's uncertain length, that requirement made it certain that his parole eligibility would be postponed beyond the two years counsel had represented, and that his serve-out dates would be extended beyond those imposed by his Jefferson County sentence, again contrary to counsel's assurances.

The trial court appointed a public defender to represent Cox and on November 23, 2004 held an evidentiary hearing at which Cox and his former counsel testified.

---

**3.** KRS 510.110 has since been amended to make the first-degree sexual abuse of a child under twelve a class C felony.

Counsel acknowledged that he had made no attempt to look into the specifics of the sexual offender treatment program, denied that Cox had asked him to do so, and allowed, in effect, that his representations regarding Cox's parole eligibility were based solely on the general parole statutes and regulations. Cox maintained that he had made it clear to counsel that he was deeply concerned about the sex-offender consequences of his plea and that he would not have accepted the plea bargain had counsel not assured him that the sex offense conviction would not affect his parole eligibility.

In its November 8, 2005 Order denying Cox's motion, the trial court accepted Cox's claim that he would not have pled guilty had he fully understood that the sex-offender treatment requirement would postpone his eligibility for parole, but relying on cases to the effect that only "gross misadvice" regarding a plea's collateral consequences could justify relief, it held that counsel's plea advice was not ineffective under that standard.

Having rejected Cox's motion to withdraw his plea, by Judgment entered March 13, 2006 the trial court sentenced Cox in accord with the plea to ten years in prison. Although the record is spare on this point, it appears that Cox's April 2006 motion for shock probation was then granted, but that by October 2006 the probation had been revoked. On October 27, 2006, Cox filed a motion pursuant to RCr 11.42 for relief from the March Judgment, in which he again alleged ineffective assistance of counsel, including this time allegations that counsel had failed to file requested appeals on his behalf. While that motion was pending, in March 2008 the Court of Appeals allowed Cox a belated appeal from the trial court's November 2005 Order denying his motion to withdraw his guilty plea. During the pendency of the appeal

the United States Supreme Court decided *Padilla.* Distinguishing the deportation consequences at issue in *Padilla* from the parole ramifications of sex offender treatment at issue here, the Court of Appeals panel unanimously agreed with the trial court that prior to his plea Cox had adequately been made aware that he would be required to complete the sexual offender treatment program and so denied his claim for relief. We granted Cox's motion for discretionary review to consider his claim that the Court of Appeals applied *Padilla* too narrowly.

## *ANALYSIS*

### I. General Matters

#### A. Standard of Review

As noted, Pridham sought relief from his guilty plea in a post-conviction proceeding pursuant to RCr 11.42. Cox moved to withdraw his plea prior to sentencing pursuant to RCr 8.10. Both defendants challenged the validity of their pleas.[4] Under either rule, to be entitled to relief on that ground the movant must allege with particularity specific facts which, if true, would render the plea involuntary under the Fourteenth Amendment's Due Process Clause, would render the plea so tainted by counsel's ineffective assistance as to violate the Sixth Amendment, or would otherwise clearly render the plea invalid. *Fraser v. Commonwealth,* 59 S.W.3d 448 (Ky.2001) (guilty plea challenged via RCr 11.42); *Edmonds v. Commonwealth,* 189 S.W.3d 558 (Ky. 2006) (plea challenged via RCr 8.10). Motions which fail adequately to specify grounds for relief may be summarily denied, as may be motions asserting claims refuted or otherwise resolved by the record. *Commonwealth v. Elza,* 284 S.W.3d 118 (Ky.2009) (RCr 11.42); *Edmonds,* 189

4. We do not here address claims other than invalidity.

S.W.3d at 569 (RCr 8.10). Motions adequately alleging valid claims not refuted by the record entitle the movant to an evidentiary hearing. *Fraser*, 59 S.W.3d at 452–53 (RCr 11.42); *Rodriguez v. Commonwealth*, 87 S.W.3d 8 (Ky.2002) (RCr 8.10). Under either rule, we review the trial court's factual findings only for clear error, but its application of legal standards and precedents (such as *Padilla*), we review de novo. *Brown v. Commonwealth*, 253 S.W.3d 490 (Ky.2008) (RCr 11.42); *Edmonds*, 189 S.W.3d at 565–66 (RCr 8.10).[5]

## B. Ineffective Assistance of Counsel Under *Strickland* and *Padilla*.

 As the parties in both cases correctly observe, to be entitled to relief from a guilty plea on the ground of ineffective assistance of counsel a defendant must show both that counsel provided deficient assistance and that he, the defendant, was prejudiced as a result. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*], 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052.

*Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 787–88, 178 L.Ed.2d 624 (2011). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 788 (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052).

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability is a probability sufficient to undermine confidence in the outcome. [*Strickland*] at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceedings." *Id.* at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052.

*Harrington*, 131 S.Ct. at 787–88.

 In assessing prejudice,

the question is not whether a court can be certain counsel's performance had no effect on the outcome.... Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. [*Strickland*], at 696, 104 S.Ct. 2052. This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' *Id.* at 693, 697,

---

**5.** In *Edmonds,* we emphasized that the determination of whether a challenged guilty plea was entered voluntarily will often involve a very fact-intensive inquiry necessarily dependent on findings by the trial court. Such findings, we indicated, are not to be disturbed on appeal absent clear error. *Edmonds* should not be understood, however, as suggesting that ineffective assistance of counsel claims brought pursuant to RCr 8.10 are subject to a standard of review different from that applied to similar claims brought under RCr 11.42.

104 S.Ct. 2052. The likelihood of a different result must be substantial, not just conceivable. *Id.* at 693, 104 S.Ct. 2052.

*Harrington*, 131 S.Ct. at 791–92 (citation omitted).

▮ In the guilty plea context, to establish prejudice the challenger must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Premo v. Moore*, ── U.S. ──, 131 S.Ct. 733, 743, 178 L.Ed.2d 649 (2011) (quoting from *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In *Premo*, the Supreme Court reaffirmed the *Hill* standard and addressed the peculiarities of an ineffective assistance claim where a guilty plea was entered:

> There are certain differences between inadequate assistance of counsel claims in cases where there was a full trial on the merits and those, like this one, where a plea was entered even before the prosecution decided upon all of the charges. A trial provides the full written record and factual background that serve to limit and clarify some of the choices counsel made. Still, hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed.

> Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial or, as in this case, even before the prosecution decided on the charges. The added uncertainly that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective

assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place. The substantial burden to show ineffective assistance of counsel, the burden the claimant must meet to avoid the plea, has not been met in this case.

131 S.Ct. at 745–46 (citation omitted).

Prior to the Supreme Court's opinion in *Padilla*, a large majority of courts, state and federal, this Court included, noting the impossibility of informing a criminal defendant of all the myriad possible adverse consequences of a contemplated guilty plea, held that the defendant's plea could be deemed knowing and voluntary as a matter of due process provided that the defendant had been advised of the "direct" consequences of the plea. This holding derived from the Supreme Court's opinion in *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), in which the Court upheld a conviction based on a guilty plea allegedly induced by the defendant's desire to avoid the possibility of a death sentence when years later it was determined in another case that the death penalty could not lawfully have been imposed. In reaching this result, the Court described the standard of voluntariness for guilty pleas as follows:

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature im-

proper as having no proper relationship to the prosecutor's business (e.g. bribes)."

*Brady,* 397 U.S. at 755, 90 S.Ct. 1463 (quoting from *Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir.1957)). The Court continued by noting that

[t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Id.* at 757, 90 S.Ct. 1463. In the years since *Brady,* the "direct" consequences of a guilty plea, those consequences of which the defendant must be aware for his plea to be deemed voluntary as a matter of due process, came to be understood as the waiver of the defendant's trial-related constitutional rights and the potential penalties to which he was subjecting himself by confessing or acquiescing to the state's charges and those to which he would be subjected if he lost at trial, *i.e.,* those matters within the direct sentencing authority of the trial court. Matters outside the trial court's sentencing authority, everything from parole eligibility to deportation to the loss of the rights to vote and to possess firearms, have been deemed "indirect" or "collateral" consequences of the plea, and the trial court's failure to advise a defendant of a guilty plea's collateral consequences has widely been held not to affect the validity of the plea. *See* Roberts, *Ignorance is Effectively Bliss: Collateral Consequences, Silence, and Misinformation in the Guilty–Plea Process,* 95 Iowa L.Rev. 119 (2009).

Because the defendant's right to due process, *i.e.,* to fair proceedings, has been deemed satisfied if he is advised of the direct consequences of his guilty plea, and because the right to the effective assistance of counsel recognized in *Strickland* was meant "not to improve the quality of legal representation,—[but] simply to ensure that criminal defendants receive a fair trial," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, it has also been widely held, as this Court held in *Padilla,* that for constitutional purposes at least, counsel's non-advice or even misadvice regarding a guilty plea's collateral consequences has no bearing on an otherwise valid plea. *Padilla,* 130 S.Ct. at 1481. In *Padilla,* of course, the U.S. Supreme Court disagreed and, with respect to deportation at least, rejected the collateral versus direct distinction as "ill-suited to evaluating a *Strickland* claim." *Id.* at 1482. The Court's concern was that despite the fact that deportation is not a matter within the sentencing court's jurisdiction, it has in recent years increasingly become an automatic consequence of a criminal drug conviction and thus has become "an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id.* at 1480 (footnote omitted). So severe a penalty, one so clearly and explicitly provided for in the immigration statutes, and one so enmeshed with a criminal conviction, the Supreme Court concluded, ought not, by being dubbed a "collateral" consequence of the plea, be removed categorically from counsel's constitutional duty to provide competent guilty-plea advice. On the contrary, in light of those considerations, counsel's incorrect assurance that Padilla's guilty plea would not result in removal from the country, fell, in the Court's view, well outside prevailing professional norms of competence, and so made Padilla's "not

a hard case in which to find a [*Strickland*] deficiency." *Id.* at 1483.[6]

## II. Under *Padilla*, Pridham Has Stated A *Strickland* Claim.

 Rejecting the Commonwealth's contention that *Padilla* affects the collateral consequences rule only in the deportation context, the Court of Appeals found Pridham's counsel's alleged misadvice—that Pridham would be eligible for parole after six years of his thirty-year sentence instead of the twenty-year period of ineligibility in fact imposed by the violent offender statute—sufficiently analogous to the misadvice at issue in *Padilla* to require the same result. We agree.

Like deportation, the extended period of parole ineligibility under the violent offender statute (85% vs. 20% for non-violent offender convictions) is a punitive measure meant to enhance the punishment of the serious offenses listed in the statute by ensuring that persons convicted of those offenses serve the lion's share of their sentences in prison and not on parole. Although this additional "penalty" is hardly as severe as the "penalty" of deportation, we agree with the Court of Appeals that the sharply extended period of parole ineligibility is a serious enough and certain enough detriment that a person pleading guilty is entitled to know about it. It is a

detriment that applies automatically upon conviction of one of the statutory offenses, and while parole, technically, is not within the sentencing court's authority, the parole consequence here is legally inseparable from the conviction and sentence over which the trial court does preside. In *Padilla*, the Court observed that the relevant immigration statute was "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." 130 S.Ct. at 1483. Here, the violent offender statute, KRS 439.3401, is also "succinct, clear and explicit" in deeming a person convicted of a Class A felony, as Pridham was, a violent offender and then providing he "shall not be released" until he has served 85% of his sentence.[7] Just as "[t]he consequences of Padilla's plea could easily be determined from reading the removal statute," 130 S.Ct. at 1483, the parole eligibility consequences of Pridham's plea could easily be determined by reading the violent offender statute. Finally, like the immigration statutes at issue in *Padilla*, the violent offender statute, KRS 439.3401, has for years now been a prominent fixture of our criminal law.[8] It is expressly referred to in KRS 532.080, the persistent felony offender sentencing statute, under which Pridham was likely to be sentenced had he gone to trial.

---

6. We note that whether *Padilla* applies retroactively to cases already final before it was decided is a viable question, but a question not presently before us and one not herein addressed. *See United States v. Orocio*, 645 F.3d 630 (3rd Cir.2011) (applies retroactively); *United States v. Hong*, 671 F.3d 1147 (10th Cir.2011) (does not apply retroactively); *Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky.2009) (adopting federal courts' retroactivity analysis). The United States Supreme Court has granted certiorari in *Chaidez v. United States*, 655 F.3d 684 (7th Cir.2011), *cert. granted,* —— U.S. ——, 132 S.Ct. 2101, 182 L.Ed.2d 867 (2012) and presumably will decide this issue this term.

7. As noted above in footnote 3, there is a recognized right to be considered for parole at 85% of the sentence or at twenty years, whichever is less. This statutory interpretation, established by case law for twenty years, works to a defendant's advantage and does not undermine the clarity and explicitness of the 85% service of sentence versus the normal 20%.

8. The violent offender statute was first enacted in 1986 and has applied to all class A felonies since its inception. The General Assembly increased the period of parole ineligibility from 50% of the sentence to 85% in 1998.

We do not believe it unreasonable to expect of competent defense counsel an awareness of the violent offender statute and accurate advice concerning its effect on parole eligibility. We agree with the Court of Appeals, therefore, that under *Padilla,* Pridham has stated a Sixth Amendment claim of ineffective assistance of counsel and is entitled to an evidentiary hearing on the merits of his claim, at which he will have an opportunity to prove that counsel misadvised him as alleged and that absent the misadvice there is a reasonable probability that he would have insisted upon a trial.

Against this result, the Commonwealth refers us to the many instances in *Padilla* where the Supreme Court is careful to limit its holding to the deportation context before it in that case. Much of the Court's discussion concerns the evolution of the immigration laws. The Court's conclusion that professional norms have come to require of competent defense counsel sound deportation advice is informed to a large extent by the widespread recognition that those laws in particular now make very likely a dire civil penalty, which many regard as more severe than the concomitant criminal consequences. More particularly, the Commonwealth points out that although the Supreme Court rejected the direct versus collateral distinction as ill-suited to Padilla's case, it did not address the appropriateness of that distinction more generally "because of the unique nature of deportation." 130 S.Ct. at 1481. What this boils down to, according to the Commonwealth, is a narrow and finely crafted deportation exception to the collateral consequences rule, which otherwise remains in effect. In the Commonwealth's view, Pridham's claim falls squarely under the still-relevant collateral consequences rule.

While the Commonwealth is certainly correct that the Supreme Court appears to have taken great pains in its *Padilla* opinion not to say more than was necessary for that decision, we cannot agree that its holding implicates no collateral consequence but deportation. For one thing, as Justice Alito's concurring opinion notes, many courts applying the collateral consequences rule have excepted from it cases in which the accused was affirmatively misadvised about a serious consequence of his guilty plea, including consequences other than deportation such as parole ineligibility. 130 S.Ct. at 1493 n. 4 (Alito, J., concurring). In the concurrence's view, this Court's position in our own *Padilla* opinion, 253 S.W.3d 482, making no distinction between misadvice and non-advice, "goes too far." *Id.* at 1494. The *Padilla* majority agreed. Indeed, even more importantly, summing up its view that non-advice about deportation can be as much a constitutional violation as misadvice, the majority states that "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue *like* deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'" *Id.* at 1484 (quoting from *Hill v. Lockhart,* 474 U.S. 52, 62, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)(emphasis supplied)). The implication would seem to be that deportation is not strictly *sui generis,* and that whether a guilty plea consequence is sufficiently "like" deportation to trigger defense counsel's constitutional duty to advise or not to misadvise are questions that must now be addressed in conjunction with the collateral consequences rule. At the very least, we understand our formerly strict application of that rule in cases of alleged misadvice, such as this one, as having been qualified, and so we must reject the Commonwealth's minimalist reading of *Padilla.*

The Commonwealth also contends that regardless of defense counsel's deficient performance, Pridham was not prejudiced

by it, and so, under *Strickland,* he cannot be entitled to relief. The Commonwealth is correct, of course, that prejudice is a *Strickland* requirement. 466 U.S. at 687, 104 S.Ct. 2052. To establish *Strickland* prejudice, the claimant must initially allege and ultimately show that absent counsel's error a meaningfully different result was a substantial likelihood, more likely than not or very nearly so. As the Supreme Court recently reiterated in *Premo,* establishing a valid ineffective assistance of counsel claim where the defendant pled guilty imposes a "substantial burden." 131 S.Ct. at 746. In *Padilla,* the Supreme Court stated that "to obtain relief [on an ineffective assistance claim] a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." 130 S.Ct. at 1485. *See also Williams v. Commonwealth,* 336 S.W.3d 42, 48 (Ky.2011). The Commonwealth contends that no meaningfully different result is likely here, that it would not have been rational to reject the plea deal, and thus that Pridham is not entitled to relief from his guilty plea regardless of whether counsel's misadvice is deficient performance under *Strickland* and *Padilla.*

To be sure, as the Commonwealth points out, the seemingly egregious difference in this case between six years of parole ineligibility, as allegedly represented by Pridham's counsel, and twenty years as mandated by statute is something of a red herring. Had Pridham been correctly advised that he was charged with an offense coming under the violent offender statute, he would have faced a choice not between six years of parole ineligibility and twenty, but between the Commonwealth's thirty-

year plea offer with its twenty-year parole ineligibility, and going to trial after which he was almost certain to be convicted of a class A felony—he was after all caught virtually red-handed and confessed—whereupon he would have been subject to a base sentence of twenty years to life with the possibility of PFO enhancement under KRS 532.080 as well. The Commonwealth maintains that even had he been accurately advised, Pridham would not have risked a trial and the likelihood of an even stiffer sentence. The Commonwealth may well be right in its analysis but at this juncture, without the benefit of the record from an evidentiary hearing, this Court is only called upon to determine whether Pridham has stated a *prima facie* ineffective assistance claim. As noted above, at the pleading stage it is the movant's burden to allege specific facts which, if true, would demonstrate prejudice.[9] While mere conclusory allegations to that effect are not enough, Pridham has met the minimal standard as to the prejudice prong.

Even had Pridham been sentenced to life imprisonment, his parole ineligibility would still have been twenty years. It would not be unreasonable, arguably, for a fifty-seven year old man to find little difference between a thirty-year sentence and a life sentence. Had he been correctly advised, in other words, Pridham might have concluded that he risked virtually nothing by going to trial. He had no realistic chance of acquittal but he had a slim chance of receiving a sentence of twenty years with parole eligibility in about seventeen years. So, arguably, correct advice could have resulted in his making a different choice. The Court of Appeals did not err, therefore, by ruling that

9. *Stiger v. Commonwealth,* 381 S.W.3d 230 (Ky.2012), also rendered today, illustrates that where the defendant fails to plead facts showing the decision to go to trial would have been rational under the circumstances, the prosecution's evidence is strong and the defendant received the minimum sentence for the charged offense an evidentiary hearing may be unnecessary.

Pridham's allegations of prejudice, like his allegations of counsel's deficient performance, stated a claim and so warrant an evidentiary hearing. On remand, the trial court will have the opportunity to hear from Pridham and the counsel who allegedly misadvised him and on a complete record will be in a position to determine whether Pridham was, in fact, prejudiced by erroneous advice that led to a thirty-year sentence plea deal.

## III. Cox is Not Entitled to Relief.

### A. Cox's Guilty Plea Was Not Invalid Under *Padilla.*

We now turn to Cox. As previously stated, Cox's counsel successfully bargained down a class A felony sodomy charge to two class D felony sex abuse charges with Cox's ten-year sentence (five years on each of those counts, to run consecutively) to be served concurrently with a ten-year sentence from an unrelated Jefferson County matter. Counsel advised Cox before Cox pled guilty, as did the Commonwealth during Cox's plea colloquy, that a plea to sex abuse would make Cox a "sex offender" subject to several statutory requirements, including the requirement that he complete, while in prison, a sex offender treatment program. Under the general parole regulations, Cox would become eligible for parole when he had served two years (20%) of his ten year sentences from Jefferson County. Cox sought to withdraw his guilty plea, however, when he discovered that he would not become eligible for parole until he completed the treatment program and that he likely could not do so within two years. Cox alleged that counsel not only failed to advise him of the potential parole consequences attaching to sex offender treatment but incorrectly assured him that the sex offense would not affect his parole eligibility. Had he been correctly advised, Cox asserted, he would not have pled guilty but would have faced trial for the class A first-degree sodomy offense.

The courts below accepted Cox's claim that the possibility of a somewhat longer period of parole ineligibility would have caused him to reject the plea bargain, but they both denied Cox relief because in their views counsel's alleged misadvice did not amount to a *Strickland* violation. Cox insists that *Padilla* requires a different result. *Padilla,* in Cox's reading, utterly invalidated the distinction between the direct and the collateral consequences of a guilty plea, and imposed on defense counsel a constitutional duty to offer accurate advice about any and all consequences that might bear on a reasonable defendant's plea decision. Because it was conceded here that counsel did not expressly apprise Cox how his mandatory sex offender treatment intersected with his parole eligibility but advised him only that the offenses to which he was pleading guilty—sex abuse— would not affect his right to parole, Cox maintains that counsel's advice must be deemed deficient under *Padilla.* Because it was further conceded that had Cox known that treatment would in fact affect his parole eligibility he would not have pled guilty, Cox insists that he has established a case of *Strickland* prejudice as well, and so should have been allowed to withdraw his plea. We agree with the Commonwealth, however, that Cox has read *Padilla* too broadly.

As noted above, although it rejected the direct versus collateral distinction with respect to deportation, the Supreme Court in *Padilla* declined to address that distinction more generally. Cox's reading fails to take the Court's caution into account. As discussed above, we understand *Padilla* as invalidating the collateral consequences rule for deportation and for consequences "like" deportation in their punitive effect, their severity, and their intimate relation-

ship to the direct criminal penalties where the consequence is easily determined from a clear and explicit statute. The deferral of Cox's parole eligibility until he completes sex offender treatment is not like deportation in any of these respects.

To begin with, sex offender treatment is not a punishment or a penalty. It is a rehabilitative measure the General Assembly has deemed important enough to make mandatory. As then-Judge, now Justice, Schroder observed for the Court of Appeals in *Garland v. Commonwealth*, 997 S.W.2d 487 (Ky.App.1999), the fact that sex offender treatment has been made a condition precedent to parole does not affect a defendant's underlying sentence and does not enhance his punishment, even where the effect of the condition precedent is to delay his parole eligibility.

That deferral, moreover, unlike the sharp increase in parole ineligibility worked by the violent offender statute, cannot be characterized as severe. It will affect, primarily, defendants given relatively short sentences and will generally add, if anything, not more than a year or two to their initial period of parole ineligibility. While this time period is no doubt significant to the persons so affected, that relatively brief deferral (*e.g.*, three, rather than two, years to parole eligibility on a ten-year sentence) is nothing like deportation.

Nor is the deferral so automatic a consequence of the defendant's sentence as to be deemed part-and-parcel of it. To be sure, sex-offender treatment is mandated by statute for persons convicted of certain offenses, and statutory provisions likewise require completion of the treatment program for parole eligibility. The effect (if any) of those provisions on a defendant's parole eligibility, however, unlike the auto-

matic effect of the violent offender statute, depends on a host of factors unknowable at the time of the defendant's plea, many of them subject to the discretion of Department of Corrections authorities, and some of them dependent on the defendant himself. Factors affecting the timing of completion of the sex offender treatment program include where the inmate is housed, the number of placements in the program at the institution, the manner in which priority is determined and the number of others in the institution who have priority over the inmate. The inmate himself is another factor with his cooperation, participation and conduct affecting the rate at which he progresses through the program. Unlike the 85% parole eligibility evident from the face of the violent offender statute, there is no place in Kentucky law where there is a "succinct, clear, and explicit," *Padilla*, 130 S.Ct. at 1483, answer to the issue of whether a sex offender treatment program can be completed in two years. Any parole eligibility effect, therefore, cannot, like the deportation at issue in *Padilla*, be said to be enmeshed with the defendant's sentence and easily ascertainable by reference to statute. We agree with the Court of Appeals and the trial court that the challenged advice in this case falls outside what the Sixth Amendment requires of counsel.[10]

Cox counters by referring us to the *Padilla* Court's insistence that " '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms,' " 130 S.Ct. at 1482 (quoting from *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052), and its heavy reliance on bar association standards, standards adopted by criminal defense and public defender organizations, and the like, as

---

10. We reiterate that counsel correctly informed Cox that he would have to complete the sex offender treatment program in prison.

"guides to determining what is reasonable." *Id.* (citation and internal quotation marks omitted). Cox notes that the American Bar Association (ABA) and criminal defense organization standards all urge defense counsel to be aware of and to advise their clients concerning a guilty plea's collateral consequences. He insists, therefore, that counsel's neglect of or misadvice concerning virtually any collateral consequence breaches professional norms and so, under *Padilla,* amounts to constitutionally deficient performance. He quotes, for example, from the ABA Standards for Criminal Justice and its commentary as follows:

> To the extent possible, defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea.... Defense counsel should be familiar with, and advise defendants of all of the possible effects of conviction.

ABA Standards for Criminal Justice, Pleas of Guilty 3d., 14–3.2(f) and cmt. (1999).

Although Cox is certainly correct that the *Padilla* Court found strong support for its holding that defense counsel must advise her client regarding the risk of deportation in the "weight of prevailing professional norms," 130 S.Ct. at 1482, we are not persuaded that the Court meant thereby to read the ABA Standards or anything like them into the Sixth Amendment. On the contrary, the Court reiterated that while bar association standards and the like "may be valuable measures of the prevailing professional norms of effective representation," such standards "are not 'inexorable commands,'" but rather are "'only guides.'" *Id.* (citations omitted). Elsewhere, as noted above, the Court has described *Strickland*'s deficiency prong as requiring the challenger

to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."... The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.

*Harrington,* 131 S.Ct. at 787–88 (quoting from *Strickland,* 466 U.S. at 687 and 690, 104 S.Ct. 2052).

We seriously doubt whether any attorney could anticipate "all of the possible effects" of a guilty plea. The potential effects are myriad. A recent survey of the Kentucky Revised Statutes revealed over 300 statutory collateral consequences of felony convictions. Daniels, Danley–Nichols, Morgan, and Rhoades, *Kentucky's Statutory Collateral Consequences Arising From Felony Convictions: A Practitioner's Guide,* 35 N. Ky. L.Rev. 413 (2008). The statutes affect everything from the defendant's civil rights and liberties to parental rights, professional licenses, and public benefits. These are in addition to the doubt numerous consequences, such as deportation, arising from federal laws, to say nothing of the less tangible consequences, such as a conviction's effect on the defendant's reputation. As the ABA's standard has it, a defense attorney ought to be aware of all this and to advise his client accordingly, but clearly, it seems to us, in the real world where attorneys' time and other resources are severely limited, guilty pleas will be entered without awareness of a collateral consequence of genuine significance to a particular defendant. We are not prepared to say, and we do not believe the Supreme Court has mandated, that in all or even many of those cases the attorney's assistance is, for that reason, to be deemed incompetent under the Sixth Amendment.

Here counsel not only bargained creatively for much reduced charges and for a sentence that would overlap, essentially, the sentence Cox was already serving, but he apprised Cox that by pleading guilty to a sex offense he was subjecting himself to several statutory requirements in addition to his prison sentence including completion of sex offender treatment and sex offender registration. According to counsel's testimony at the RCr 8.10 hearing, he and Cox even discussed the fact that sex offender treatment required the defendant to admit his offense and that an *Alford* plea (*North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)), by means of which an accused pleads "guilty" without admitting to the state's charges, could work to Cox's disadvantage by making it more difficult or even impossible for him to meet the treatment requirement. According to Cox, counsel at the same time assured him that he would remain eligible for parole in two years, and at the hearing counsel admitted that he told Cox that sex abuse did not come within the violent offender statute but was subject to the general rule under which an inmate becomes eligible for parole upon having served 20% of his sentence. That advice was not incorrect, as far as it went, but neither was it complete, since in Cox's case completion of sex offender treatment was an additional condition of parole eligibility. Would it have been better practice for counsel to spell out for Cox that the treatment requirement supplemented the general parole eligibility provision so that the "two years until eligibility" could be actually longer if he had not completed treatment? Clearly it would have been, but *Strickland* does not require flawless representation. We are not persuaded that counsel's lapse, if that is what it was, rendered his representation of Cox incompetent and beyond the constitutional pale. The error was neither so gross—counsel did, after all, put Cox on notice that he would not be re-leased from prison until he completed treatment—nor were the consequences so dire—a somewhat extended term of parole ineligibility and the possible postponement of good-time credit—as to bring Cox's case within the holdings of *Padilla* and *Strickland.*

There is another reason, we believe, for this result. As noted above, the collateral consequences rule has developed as an attempt to harmonize, to the extent possible, in the context of guilty pleas, a defendant's right to notice under the Constitution's due process provisions with his right under the Sixth Amendment to be advised adequately by counsel. The two rights are not coextensive, of course, and as the Supreme Court observed in *Padilla,* under the Sixth Amendment courts have a responsibility "to ensure that no criminal defendant—whether a citizen or not—is left to the 'mercies of incompetent counsel.'" 130 S.Ct. at 1486 (quoting from *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Neither, however, should courts and prosecutors be left entirely to the mercies of incompetent counsel. The state's interest in the validity of its guilty pleas and the finality of its convictions is substantial, and, in this context, the primary means the state has of protecting that interest is the plea colloquy. The trial court cannot practice defense counsel's case for him, of course, and so the protection can never be complete, but at the colloquy the court can attempt to ensure that the defendant has been advised of those matters necessary to render his plea adequately informed and constitutionally valid. The trial court did so here, by assuring that Cox had been expressly cautioned that the sex offenses to which he was pleading guilty carried significant collateral consequences including the sex offender treatment requirement. Under Cox's expansive reading of *Padilla,* however, the Sixth Amendment

right to pre-plea information would so swamp what has been required as a matter of due process and what a court could attempt to inquire about during its proceedings as to render the plea colloquy largely an empty gesture, a courtroom exercise to establish a record regarding the defendant's awareness of his basic due process rights. We are not persuaded that the Supreme Court intended so drastic a result, and for this reason, too, we must reject Cox's claim.

**B. Cox's Non–Constitutional Claim Was Not Presented to the Trial Court and Does Not Entitle Cox to Relief Under RCr 10.26.**

 Finally, Cox contends that even if the U.S. Constitution does not entitle him to withdraw his guilty plea, RCr 8.10 does. As Cox notes, that rule provides in pertinent part that "[a]t any time before judgment the court may permit the plea of guilty . . . to be withdrawn and a plea of not guilty substituted."[11] Under this rule and RCr 8.08, which forbids acceptance of a guilty plea until the court determines that it is made voluntarily and with understanding of the nature of the charges, if the trial court determines that the guilty plea is invalid for some reason, such as counsel's ineffective assistance, then it must permit the defendant to withdraw it. *Edmonds*, 189 S.W.3d at 565–70. Otherwise, the rule makes clear that the trial court *may* permit the defendant to withdraw even a valid plea. Under our rule, this latter decision is one addressed solely to the trial court's sound discretion. *Id.* at 566. Cox maintains that the trial court abused that discretion when it refused to allow him to withdraw his plea after having found that he would not have pled guilty had he been correctly informed that completion of sex offender treatment would extend his ineligibility for parole.

Cox would have us read into the rule a right of withdrawal any time a defendant establishes "a fair and just reason" for it, provided that withdrawal would not unduly prejudice the Commonwealth, and he contends that his reason for wanting to withdraw his plea meets that standard. *Cf.* Fed. R.Crim. Proc. 11(d)(2)(B) ("A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if: . . . the defendant can show a fair and just reason for requesting the withdrawal.").

 Cox did not present this claim to the trial court, and so it was not properly preserved for our review. We decline to address it, therefore, beyond observing that the denial of Cox's motion to withdraw his plea was not a palpable error so as to entitle Cox to relief under RCr 10.26. The trial court's error, if any, in not applying a standard new to our law can hardly be deemed "obvious," and the denial of Cox's motion to withdraw his plea was not manifestly unjust. *Ernst v. Commonwealth*, 160 S.W.3d 744, 758 (Ky.2005) ("[P]alpable error [is] . . . composed of two elements: obviousness and seriousness."). Like Cox, many other defendants, after entering valid guilty pleas, find that some consequence of the bargain gives them second thoughts. Mere second thoughts, however, do not entitle one to relief from one's guilty plea. *United States v. Ensminger*, 567 F.3d 587, 593 (9 th Cir.2009) ("[A] change of heart—even a 'good faith change of heart'—is not a fair and just reason that entitles [one] to withdraw his plea."). The trial court having correctly determined that Cox's plea was not invalidated by misadvice, its denial of his withdrawal motion, notwithstanding his change of heart, was not manifestly unjust so as to entitle Cox to RCr 10.26 relief.

---

11. We do not address that part of the rule pursuant to which, if the court rejects the parties' plea bargain, the defendant may withdraw his guilty plea.

*CONCLUSION*

In sum, under *Padilla* the collateral consequences rule must yield in those cases where a defendant's guilty plea was induced by his attorney's misadvice concerning a collateral consequence of the plea sufficiently punitive, grave, and enmeshed with the plea's direct consequences, and so "easily ... determined" from the statutes, as to be deemed like deportation. *Padilla*, 130 S.Ct. at 1473. The misadvice allegedly given Pridham—that he would become eligible for parole in six years whereas in fact as a "violent offender" he would not become eligible for twenty years—meets that stringent standard and so requires that Pridham be granted the opportunity to prove his allegations of misadvice and prejudice, if any, at an evidentiary hearing. By contrast, Cox's claim does not entitle him to relief. Although it appears that counsel may have given Cox incomplete and perhaps ambiguous advice concerning the parole ramifications of the mandatory sex offender treatment program, neither the error nor the parole consequences of Cox's plea approach the egregiousness of concern to the Court in *Padilla*. Moreover, the timing of completion of the program is not a matter easily determined by reference to succinct, clear and explicit law. Cox's claim, consequently, does not come within the ambit of *Padilla*. Accordingly, in both 2010–SC–000733 (Cox) and 2011–SC–000126 (Pridham) we hereby affirm the decisions of the Court of Appeals. Pridham's case is remanded to Hardin Circuit Court for further proceedings consistent with this Opinion.

All sitting. All concur.