**Yahiya H. AL–ARIDI, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2011–CA–001046–DG.

Court of Appeals of Kentucky.

June 28, 2013.

John M. Vickerstaff, Louisville, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Perry T. Ryan, Assistant Attorney General, Frankfort, KY, for appellee.

Before CAPERTON, LAMBERT, and MOORE, Judges.

### OPINION

LAMBERT, Judge:

This matter is before this Court on discretionary review from the opinion of the Shelby Circuit Court affirming the order of the Shelby District Court denying a motion by Yahiya H. Al–Aridi to vacate his guilty plea pursuant to Kentucky Rules of Civil Procedure (CR) 60.02(e). We have

thoroughly considered the parties' arguments and the applicable case law, and we hold that the circuit court properly affirmed the district court's ruling. Hence, we affirm.

Yahiya H. Al–Aridi is a native citizen of Iraq. He entered the United States as a refugee in 2000 and became a permanent resident later that year in Louisville, Kentucky. On July 1, 2001, Al–Aridi was charged with third-degree sexual abuse in violation of Kentucky Revised Statutes (KRS) 510.130, a Class A misdemeanor, when he was accused of touching the buttocks of a 15–year–old boy without his consent. While represented by private counsel, Al–Aridi entered a guilty plea on January 2, 2002, and received a 90–day sentence and costs of $92.35. He served the sentence and was subsequently released.

In October 2010, close to nine years later, Al–Aridi moved to vacate his guilty plea pursuant to CR 60.02(3). The basis for the motion was the denial of his application for U.S. citizenship because of his guilty plea to sexual abuse, which made him ineligible for citizenship under federal regulations. Al–Aridi claimed that his attorney was ineffective for failing to properly advise him of the immigration consequences of pleading guilty. He maintained that he would not have entered the plea, but would have challenged the charge, had he known he would have been ineligible for naturalization. In support of his claim of ineffective assistance, Al–Aridi cited to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and to the more recent case of *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). In *Padilla*, the United States Supreme Court held that the failure to advise about the immigration consequences of a criminal plea could constitute ineffective assistance. Al–Aridi

claimed that his attorney failed to investigate the immigration consequences of a possible plea and that he suffered prejudice as a consequence because he was deprived of the opportunity to challenge the charge against him or negotiate an alternative plea. In an affidavit attached to the motion, Al–Aridi stated that his attorney advised him that he would be convicted if the matter went to trial because of his ethnic background, and that if he contested the charges and was convicted, he would face deportation back to Iraq, where he would have been killed. His attorney, he claimed, did not inform him that if he pled guilty to the charge, he would be ineligible for naturalization.

The district court held a hearing on January 20, 2011, where the parties and the court discussed the effect of *Padilla.* At the hearing, the Commonwealth disagreed with Al–Aridi that *Padilla* had any impact on the case at bar as *Padilla* dealt with deportation, while the present case dealt with naturalization. The court concluded that its reading of *Padilla* revealed that the majority of the Supreme Court focused its ruling on deportation, not anything further than that, and that the ruling was therefore not binding on the case before it. The court found a distinction between being removed from the country and being denied citizenship, and it declined to read *Padilla* as broadly as Al–Aridi suggested. The district court then denied Al–Aridi's motion to vacate via a docket order entered on January 21, 2011.

Al–Aridi appealed the district court's ruling to the circuit court, arguing in his statement of appeal that the district court's reading of *Padilla* was too narrow and that the legal reasoning supporting *Padilla* supported his case as well. The Commonwealth did not file a counterstatement of appeal. The circuit court ultimately affirmed the district court's ruling,

but on a different basis. The circuit court did not reach the applicability of *Padilla* because it determined that Al–Aridi was not properly before the court pursuant to CR 60.02 and that he did not timely seek relief. The court held that Al–Aridi should have sought relief via Kentucky Rules of Criminal Procedure (RCr) 11.42 rather than CR 60.02, because he couched his claim in terms of ineffective assistance and relied upon *Strickland*. The circuit court also held that Al–Aridi did not seek relief in a reasonable time because he sought relief eight years after he had served his 90–day sentence and more than two years after his application for citizenship was denied, without any explanation for the delay. Al–Aridi moved this Court for discretionary review, which was granted, and this appeal follows.

On appeal, Al–Aridi argues that the circuit court erred in holding that he could not raise his claim for relief under CR 60.02 and that his motion was not brought in a reasonable time. Further, Al–Aridi addresses the merits of the district court's ruling that the holding in *Padilla* does not extend to his own situation, but instead is limited to cases involving deportation. He specifically cites to the opinion in *Jacobi v. Commonwealth*, 2011 WL 1706528 (2009–CA–001572–MR),[1] in which this Court extended *Padilla* to situations in-volving parole eligibility. The Commonwealth disputes Al–Aridi's arguments and specifically argues that *Padilla* should not be retroactively applied because that case announced a new rule of constitutional interpretation.[2] For purposes of this opinion, we shall only address whether *Padilla* has retroactive application.

Recognizing that there were several cases pending before the Supreme Court of Kentucky related to the application of *Padilla*, we placed the present appeal in abeyance pending final decisions in those cases. The Supreme Court rendered its decisions on October 25, 2012. The opinion in *Stiger v. Commonwealth*, 381 S.W.3d 230 (Ky.2012), became final in November 2012, and the consolidated opinion in *Commonwealth v. Pridham*, 394 S.W.3d 867 (Ky.2012),[3] became final in April 2013, upon the Supreme Court's denial of the Commonwealth's petition for rehearing in *Pridham*. In these three cases, the Court addressed the application of KRS 439.3401, the violent offender statute (*Stiger* and *Pridham*), and the application of the sex offender treatment law (*Cox*), all in the context of RCr 11.42 proceedings alleging ineffective assistance of counsel during the plea proceedings. The Court held that Pridham successfully stated a claim for relief under *Padilla*, while Cox and Stiger

---

1. The Supreme Court denied the Commonwealth's motion for discretionary review on June 12, 2013, but ordered the opinion of the Court of Appeals not to be published. *Commonwealth v. Jacobi*, 2011–SC–000319–D .

2. The Commonwealth admits that the retroactivity issue was not raised below, but asserts that this issue may be raised, citing *Bowling v. Commonwealth*, 168 S.W.3d 2, 5 n. 2 (Ky. 2004) ("a cross-appeal was not required because the result reached by the trial court was not adverse to the Commonwealth. *Brown v. Barkley*, Ky., 628 S.W.2d 616, 618 (1982); *cf. Commonwealth v. Vester*, Ky., 956 S.W.2d 204, 205–06 (1997) (on appeal from Board of Claims, prevailing party was not required to file a cross-appeal to assert that the Board reached the right result for the wrong reason)"), and *Hale v. Combs*, 30 S.W.3d 146, 150 n. 2 (Ky.2000) ("the prevailing party need not file a cross-appeal in order to assert that the lower court (or administrative agency) reached the right result for the wrong reason."). Therefore, the question of retroactivity is properly before this Court.

3. The Supreme Court of Kentucky rendered a consolidated opinion addressing the cases of *Cox v. Commonwealth*, 2010–SC–000733–DG, and *Commonwealth v. Pridham*, 394 S.W.3d 867 (Ky.2012).

had not. However, the Court did not address whether *Padilla* could be applied retroactively:

> We note that whether *Padilla* applies retroactively to cases already final before it was decided is a viable question, but a question not presently before us and one not herein addressed. *See United States v. Orocio*, 645 F.3d 630 (3rd Cir.2011) (applies retroactively); *United States v. Hong*, 671 F.3d 1147 (10th Cir.2011) (does not apply retroactively); *Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky.2009) (adopting federal courts' retroactivity analysis). The United States Supreme Court has granted certiorari in *Chaidez v. United States*, 655 F.3d 684 (7th Cir.2011), cert. granted, —— U.S. ——, 132 S.Ct. 2101, 182 L.Ed.2d 867 (2012) and presumably will decide this issue this term.

*Pridham*, 394 S.W.3d at 870 n. 6 (Ky.2012), reh'g denied (Apr. 25, 2013).

While the petition for rehearing was pending in *Pridham*, the Commonwealth filed a motion in the present case seeking leave to cite supplemental authority, and it attached a copy of a recently rendered United States Supreme Court case, *Chaidez v. United States*, —— U.S. ——, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013). This Court granted the motion on March 21, 2013.

In *Chaidez*, the U.S. Supreme Court held that *Padilla* does not have retroactive application:

> In *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), this Court held that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea. We consider here whether that ruling applies retroactively, so that a person whose conviction became final before we decided *Padilla* can benefit from it. We conclude that, under the principles set out in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), *Padilla* does not have retroactive effect.

*Chaidez*, 133 S.Ct. at 1105. The Supreme Court went on to explain its rationale as follows:

> So when we decided *Padilla*, we answered a question about the Sixth Amendment's reach that we had left open, in a way that altered the law of most jurisdictions—and our reasoning reflected that we were doing as much. In the normal *Strickland* case, a court begins by evaluating the reasonableness of an attorney's conduct in light of professional norms, and then assesses prejudice. But as earlier indicated, *see supra*, at 1107–1108, *Padilla* had a different starting point. Before asking whether the performance of *Padilla's* attorney was deficient under *Strickland*, we considered (in a separately numbered part of the opinion) whether *Strickland* applied at all. *See* 559 U.S., at 363–68, 130 S.Ct., at 1480–1482. Many courts, we acknowledged, had excluded advice about collateral matters from the Sixth Amendment's ambit; and deportation, because the consequence of a distinct civil proceeding, could well be viewed as such a matter. *See id.*, at 363–66, 130 S.Ct., at 1480–1481. But, we continued, no decision of our own committed us to "appl[y] a distinction between direct and collateral consequences to define the scope" of the right to counsel. *Id.*, at 365, 130 S.Ct., at 1481. And however apt that distinction might be in other contexts, it should not exempt from Sixth Amendment scrutiny a lawyer's advice (or non-advice) about a plea's deportation risk. Deportation, we stated, is "unique." *Ibid.* It is a "particularly se-

vere" penalty, and one "intimately related to the criminal process"; indeed, immigration statutes make it "nearly an automatic result" of some convictions. *Ibid.* We thus resolved the threshold question before us by breaching the previously chink-free wall between direct and collateral consequences: Notwithstanding the then-dominant view, "*Strickland* applies to Padilla's claim." *Id.,* at 366–68, 130 S.Ct., at 1482.

If that does not count as "break[ing] new ground" or "impos[ing] a new obligation," we are hard pressed to know what would. *Teague,* 489 U.S., at 301, 109 S.Ct. 1060. Before *Padilla,* we had declined to decide whether the Sixth Amendment had any relevance to a lawyer's advice about matters not part of a criminal proceeding. Perhaps some advice of that kind would have to meet *Strickland*'s reasonableness standard—but then again, perhaps not: No precedent of our own "dictated" the answer. *Teague,* 489 U.S., at 301, 109 S.Ct. 1060. And as the lower courts filled the vacuum, they almost uniformly insisted on what *Padilla* called the "categorica[l] remov[al]" of advice about a conviction's non-criminal consequences—including deportation—from the Sixth Amendment's scope. 559 U.S., at 366–68, 130 S.Ct., at 1482. It was *Padilla* that first rejected that categorical approach—and so made the *Strickland* test operative—when a criminal lawyer gives (or fails to give) advice about immigration consequences. In acknowledging that fact, we do not cast doubt on, or at all denigrate, *Padilla.* Courts often need to, and do, break new ground; it is the very premise of *Teague* that a decision can be right and also be novel. All we say here is that *Padilla*'s holding that the failure to advise about a non-criminal consequence could violate the Sixth Amendment would not have been—in fact, was

not—"apparent to all reasonable jurists" prior to our decision. *Lambrix* [*v. Singletary* ], 520 U.S. [518], at 527–528, 117 S.Ct. 1517 [137 L.Ed.2d 771 (1997) ]. *Padilla* thus announced a "new rule."

*Chaidez,* 133 S.Ct. at 1110–11 (footnotes omitted). Accordingly, because *Padilla* announced a new rule, "[u]nder *Teague,* defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Id.,* 133 S.Ct. at 1113.

Turning to the present case, we recognize that by the time *Padilla* was rendered, Al–Aridi's conviction had long been final. Therefore, pursuant to the holding in *Chaidez,* Al–Aridi cannot sustain a claim under *Padilla* and we must affirm the circuit court's opinion upholding the district court's order denying Al–Aridi's CR 60.02 motion to set aside his conviction, albeit on a different ground. Because *Chaidez* is determinative on the main issue before us, we need not address the remainder of the issues Al–Aridi raises in his brief, including whether *Padilla* extends to naturalization issues, the timeliness of the motion, and whether his claim for relief was properly brought pursuant to CR 60.02.

For the foregoing reasons, the opinion of the Shelby Circuit Court is affirmed.

ALL CONCUR.