RENDERED:  AUGUST 21, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-001310-MR

ROBERT E. CURRY                                                                APPELLANT

v.
APPEAL FROM HARLAN CIRCUIT COURT
HONORABLE KENT HENDRICKSON, JUDGE
ACTION NO. 13-CR-00246

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  DIXON, KRAMER, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Robert E. Curry appeals from an order of the Harlan

Circuit Court summarily denying his motion filed pursuant to Kentucky Rules of

Criminal Procedure (RCr) 11.42 based on ineffective assistance of counsel.  He

presents five arguments on appeal:  (1) his counsel was ineffective for advising

him to reject the Commonwealth's guilty plea offer; (2) his counsel was ineffective

for failing to conduct an adequate pretrial investigation and hire a forensic expert;
(3) his counsel was ineffective for failing to impeach a key witness; (4) cumulative
error; and (5) he was entitled to an evidentiary hearing.

The facts leading to Curry's conviction of intentional murder were
summarized by the Kentucky Supreme Court in Curry's direct appeal:

> In September 2012, John Anderson was homeless
> and sleeping in a pickup truck parked near Penix's house.
> Penix, whom Anderson had known and sometimes lived
> with, let Anderson use the bathroom in his house.
> Sometime during the evening of September 5, 2012,
> Anderson went to Penix's house to bathe. While
> Anderson was there, Curry arrived, and Curry and Penix
> began drinking. When the two became intoxicated,
> Anderson left and went to the truck to sleep.
>
> Early in the morning of September 6, 2012,
> Anderson returned to Penix's house and saw Penix, who
> was covered in blood, lying on the floor. Anderson felt
> Penix's neck to see if he was alive and, when he
> determined that Penix was not, called 911. While he was
> on the phone with the 911 operator, Anderson saw Curry
> lying on the floor near a couch. He checked Curry,
> determined that Curry was alive, and went outside to wait
> for emergency personnel to arrive.
>
> When police officers arrived, Curry, who was
> initially difficult to arouse and was later determined to be
> intoxicated, was covered in blood. The officers arrested
> Curry and transported him to the state police post for
> questioning. The officers observed that Curry's hands
> were bruised and swollen and, after the medical examiner
> determined that Penix had been beaten to death, a grand
> jury indicted Curry on multiple counts . . . .

> Curry's defense theory at trial was that someone else had beaten Penix to death, and he pointed to Anderson and two other men as possible alternative perpetrators.

*Curry v. Commonwealth*, No. 2014-SC-000310-MR, 2016 WL 669364, at *1 (Ky. Feb. 18, 2016) (unpublished) (footnote omitted).  Following a jury trial, Curry was convicted of intentional murder and sentenced to twenty-five years of imprisonment.

In his direct appeal, Curry argued that his conviction should be reversed because the trial court refused to grant his motion for a continuance and improperly restricted his ability to cross-examine Anderson.  *Id*. at *1-3.  The Kentucky Supreme Court affirmed Curry's conviction.  *Id*. at *4.

On September 5, 2016, Curry filed a *pro se* RCr 11.42 motion accompanied by a memorandum and a motion for an evidentiary hearing.  In his motion, Curry alleged that counsel was ineffective when counsel advised him not to accept a guilty plea offer when counsel was not prepared for trial.  Specifically, he alleged:

> Approximately five (5) weeks before Mr. Curry was to go to trial the Commonwealth made a plea offer. In exchange for a plea of guilty to manslaughter, Mr. Curry would receive a sentence of ten (10) years at 85% parole eligibility.  Mr. Curry did not want to enter a plea of guilty, however, he had to concede that the state's case was sufficient to find him guilty of murder if his attorney did not investigate thoroughly and prepare an adequate defense.  Mr. Curry's attorney assured him that he had an

excellent defense. Mr. Curry was assured by his attorney that thorough investigation had been performed and that counsel was in good position to present a very convincing and effective defense to the jury. Because of counsel's assurance that he was prepared and that a good defense would be presented, Mr. Curry decided to reject the plea.

Curry further alleged that counsel failed to conduct an adequate investigation when counsel failed to speak with witnesses that would have provided information regarding an alternate perpetrator. He also alleged that counsel was ineffective because he failed to request a continuance for additional DNA testing to discover possible alternate perpetrators, by not hiring an expert to explain the DNA test results, in his impeachment of Anderson, and by not producing an expert to explain the impact of intoxication on the thought process. Without conducting an evidentiary hearing, the trial court denied Curry relief. This appeal followed.

The right to counsel in a criminal case is guaranteed by the Sixth Amendment to the United States Constitution and Section Eleven of the Kentucky Constitution. As the United States Supreme Court observed in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449 n.14, 25 L.Ed.2d 763 (1970)), "the right to counsel is the right to the effective assistance of counsel." The two-prong test of *Strickland* for determining ineffective assistance of counsel claims "has now become hornbook law. 'First,

the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show the deficient performance prejudiced the defense." *Commonwealth v. Leinenbach*, 351 S.W.3d 645, 647 (Ky. 2011) (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052).

Pursuant to RCr 11.42(5), if there is "a material issue of fact that cannot be determined on the face of the record the court shall grant a prompt hearing . . . ." The trial court is not free to "disbelieve [a defendant's] factual allegations" without conducting an evidentiary hearing. *Fraser v. Commonwealth*, 59 S.W.3d 448, 453 (Ky. 2001).

*Strickland* applies to claims of ineffective assistance of counsel arising from the plea bargaining process. A defendant who rejects a plea offer due to the advice of counsel may state a claim of ineffective assistance of counsel. *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). To succeed, the defendant must show:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.*, 566 U.S. at 164, 132 S.Ct. at 1385.

The Commonwealth's plea offer to Curry was seven years for second-degree manslaughter, enhanced to ten years by the persistent felony offender (PFO) II charge. Curry argues he received ineffective assistance of counsel when counsel advised him to reject the plea offer because he would be ineligible for parole until serving 85% of his sentence and counsel erroneously believed that Curry could be acquitted of all charges based on an intoxication defense.

Manslaughter, second degree, is a Class C felony. Kentucky Revised Statutes (KRS) 507.040. Manslaughter, second degree, is not a violent offense pursuant to KRS 439.3401 and carries a 20% parole eligibility. Therefore, the offer was ten years to serve for manslaughter, second degree, with 20% parole eligibility.

Curry alleges that trial counsel did not understand the PFO statute and the violent offender statute and their effects on parole eligibility. That allegation is not refuted by the record.

The last pretrial conference was held twelve days before the trial was scheduled to begin and Curry was present. At that conference, trial counsel moved for a continuance to investigate his alternate perpetrator theory, which was denied. The following conversation occurred:

> Defense Counsel: The reason I hadn't filed a motion is it looked like there was some light at the end of the tunnel in regards to a deal. I'd made an offer and the

Commonwealth rejected it. I didn't know they'd rejected it until yesterday.

Commonwealth: We made an offer, you counteroffered, which I got your counteroffer Monday and I told you on Wednesday that I rejected your counteroffer. But our offer is still out there.

Judge: Well let me ask you something about this, if you don't object to talking to me about this, what was your last offer?

Commonwealth: Let me look at it exactly.

Defense Counsel: I can tell you exactly your honor.

Commonwealth: He has misstated it.

Defense Counsel: I'm not clear on the misstatement, your honor.

Commonwealth: We've had a PFO issue and that's what has made the difference. Do you want to see it?

Judge: No, just tell me what it is.

Commonwealth: It's to amend the murder charges to manslaughter one, I mean manslaughter second, and seven years enhanced by the PFO to ten years to serve. That's the bottom line. The end.

Judge: So your problem is that it goes from manslaughter second to an 85% deal, is that what your problem with that is?

Commonwealth: He's suggesting that it be negligent homicide.

Defense Counsel: Your honor, I suggested . . .

Judge:  Which would be a Class D felony.

Defense Counsel:  Enhance it to Class C because of PFO II, give him three years for a few other little, menacing and resisting or something, to run concurrent, with the five years for Class D, still enhance it to a C, give him credit, he's already been incarcerated in one form or another for a year and a half.  He'd have the PFO II status, he'd be convicted of another felony, he'd still be in jail, the only difference would be five years instead of ten.  With the super amount of evidence, with the lack of evidence.  This is almost totally a circumstantial case they are going to present here in a week and a half.

Judge:  Don't say a week and a half like this case hasn't been going on.  I've been involved in it for months myself.  It's been around.

Defense Counsel:  It wasn't aimed at you, your honor.  I was . . . in my mind, . . . but . . . .

Judge:  I understand.  So you have 85% on either one of them, the ten or the five.  If it was a D and taken to a C by PFO he'd still have to serve 85% is that correct?

Commonwealth:  That's correct.

Judge:  Let's make sure.  Somebody from probation and parole come over here for just a second.  Or two of you, if you feel safer to come over here with two of you.  I want to ask you just a question, if you don't feel comfortable asking this:  If you have a Class D felony that is PFO, and a person gets let's say five years on a Class D that is PFO, which makes it a C, is that an 85% serve out?

Probation and Parole:  I'm pretty sure it is.

Defense Counsel:  It's a PFO II, though, too, your honor.

> Probation and Parole:  That I'd have to look.
>
> Judge:  If it's a PFO II, it would be worse than a PFO I.
> So, I mean, why don't you take a look and give us a
> comfort level on that.

Probation and Parole never definitively answered the trial judge's question.  From the dialogue above it is apparent that trial counsel, the Commonwealth, and the trial court mistakenly believed that the PFO II enhancement changed the classification of the crime and, consequently, the parole eligibility from 20% to 85%.

The Kentucky Supreme Court has held that counsel's incorrect advice concerning parole eligibility can rise to the level of ineffective assistance of counsel—particularly when parole eligibility can be easily determined by reading a "succinct, clear and explicit" statute. *Commonwealth v. Pridham*, 394 S.W.3d 867, 878 (Ky. 2012).  Pridham accepted a plea offer which provided for a thirty-year sentence.  Later, he filed an RCr 11.42 motion alleging that his attorney rendered ineffective assistance by mistakenly advising him that if he pleaded guilty, he would become eligible for parole after serving six years.  That advice was erroneous because the violent offender statute applied and rendered Pridham ineligible for parole for twenty years.  Pridham argued that if he had been properly advised, he would have chosen to go to trial. The Kentucky Supreme Court concluded that the "sharply extended period of parole ineligibility" was "a serious

enough and certain enough detriment that a person pleading guilty" was "entitled to know about it." *Id.*

The Commonwealth argued that if Pridham had been accurately advised, he would not have risked going to trial and possibly incurring an even stiffer sentence. The Court held that even if the Commonwealth was correct, an evidentiary hearing was required to explore the parameters of Pridham's demonstration of prejudice:

> [W]ithout the benefit of the record from an evidentiary hearing, this Court is only called upon to determine whether Pridham has stated a *prima facie* ineffective assistance claim. As noted above, at the pleading stage it is the movant's burden to allege specific facts which, if true, would demonstrate prejudice. While mere conclusory allegations to that effect are not enough, Pridham has met the minimal standard as to the prejudice prong.

*Id*. at 880 (footnote omitted).

Although in *Pridham* the appellant alleged he accepted rather than rejected the plea offer on the erroneous advice of counsel, the same reasoning is applicable here. Curry's allegation warrants an evidentiary hearing. However, the Commonwealth argues that we should ignore the merit of Curry's claim that he was entitled to an evidentiary hearing because Curry did not specifically argue before the trial court that he was misinformed as to his parole eligibility and advised against accepting the plea offer.

-10-

Our Supreme Court has held that an inmate filing an RCr 11.42 motion is not entitled to counsel unless he or she is entitled to an evidentiary hearing. *Fraser*, 59 S.W.3d at 453. After counsel is appointed, counsel frequently supplements the inmate's *pro se* RCr 11.42 motion with additional grounds that the inmate, untrained in the law, did not recognize existed. However, those inmates who are denied a hearing and counsel are left to meander through the legal system without legal assistance even though their constitutional right to effective assistance of counsel may have been denied, resulting in conviction. We conclude that in such instances, *pro se* RCr 11.42 motions must be liberally construed "to extract the appellant's intent and bring about a full adjudication of the relevant issues[.]" *Taylor v. Commonwealth*, 354 S.W.3d 592, 594 (Ky.App. 2011). This approach is particularly just where, as here, an inmate is proceeding *pro se* and it is apparent from the record that he is entitled to an evidentiary hearing and, therefore, the appointment of counsel. Construing Curry's motion liberally, we conclude he sufficiently alleged that he was erroneously advised to reject the guilty plea offer based on the erroneous belief that parole eligibility was 85% to warrant an evidentiary hearing.

Curry also alleges that trial counsel erroneously believed and told him that voluntary intoxication was a complete defense, which he claims was a factor in his decision to reject the guilty plea. He points out that at the close of the

-11-

Commonwealth's case, his trial counsel moved for a directed verdict on the basis of intoxication.

Although voluntary intoxication is a defense to intentional murder, it is not a defense to second-degree manslaughter. *Slaven v. Commonwealth*, 962 S.W.2d 845, 857 (Ky. 1997). Therefore, trial counsel's motion for a directed verdict on the basis of intoxication was flawed because intoxication did not entitle Curry to a complete acquittal. *Acosta v. Commonwealth*, 391 S.W.3d 809, 817 (Ky. 2013). However, the question is not whether counsel's belief was wrong but whether that belief was conveyed to Curry causing him to reject the guilty plea.

Again, we construe Curry's RCr 11.42 motion liberally and conclude that his allegation that he rejected the plea offer because he was told he had "an excellent defense" sufficiently raised his claim in the trial court and that his claim is not refuted by the record. Curry is entitled to an evidentiary hearing on whether he received ineffective assistance of counsel when he rejected the plea offer.

Curry also alleges that his trial counsel failed to conduct an adequate pretrial investigation, which included obtaining a forensic expert. He points out that just twelve days prior to trial, counsel requested a continuance stating he needed additional time to find potential alternate perpetrators. At that time, the trial court asked if counsel planned to have further DNA analysis of materials found at the crime scene, to which counsel responded that he did not. Curry argues

that there was known evidence that would lead a reasonable attorney to investigate further.

An attorney has a duty to perform a reasonable investigation. *Strickland*, 466 U.S. at 691, 104 S.Ct at 2066. In the context of an ineffective assistance claim, the question is whether the known evidence would lead a reasonable attorney to investigate further. *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S.Ct. 2527, 2538, 156 L.Ed.2d 471 (2003).

The DNA testing revealed that Penix had hairs in both hands that did not belong to him or Curry, but those unidentified hairs were not tested by the crime lab. A DNA sample from the tub faucet knob was a mixture of Penix and another unidentified person. Curry argues that counsel should have sought a continuance to have the potentially exculpatory evidence tested by another facility and obtain a forensic expert to assist in his defense. He further alleges that trial counsel was ineffective in cross-examining the Commonwealth's forensic expert.

Curry does not state how a forensic expert would have been helpful to his case or what additional information that expert would have uncovered. The DNA results demonstrated the presence of another person's DNA at the crime scene, but also that Curry's DNA was present. Further, the jury heard evidence that Anderson, one of Curry's possible alternate perpetrators, entered Penix's home the morning after Penix was killed, found his body, checked to see if he was alive,

and called 911. While additional testing might confirm there was unidentified DNA in Penix's home, that evidence would only corroborate that another person was in the home, not identify who that person was nor exonerate Curry. Further, the record refutes Curry's allegation that trial counsel did not cross-examine the Commonwealth's forensic expert, and Curry offers no explanation of what further evidence cross-examination would have revealed favorable to his defense. We conclude the trial court properly summarily denied Curry's claims relating to the forensic evidence.

During cross-examination of an officer who arrived at the crime scene, defense counsel asked him, "As you neared the driveway, is that where you saw John Anderson? And did he state to you, 'It's Bruce Penix—Robby (Curry) has beaten him to death?'" Curry claims this statement amounted to ineffective assistance of counsel because "this was the first time the jury heard the allegation that Curry killed Penix." This claim is completely unfounded as the jury knew that Curry was on trial for Penix's murder and does not warrant an evidentiary hearing.

Curry's final claim of ineffective assistance of counsel is that trial counsel did not pursue the introduction of evidence on cross-examination of Anderson of a prior incident involving the then-Harlan County Sheriff Marvin Lipfird. Allegedly, during the "switched identity incident" Lipfird went to

Anderson's home to arrest Anderson's son and Anderson lied to Lipfird claiming to be his son.

Trial counsel asked Anderson on cross-examination if he had ever given a false identity to police. After the Commonwealth objected and briefing by Curry and the Commonwealth, the trial court ruled that it would not admit evidence of the switched identity incident unless Curry could convince it to do so. Trial counsel then indicated he did not intend to go forward with that evidence.

On direct appeal, the trial court's ruling regarding the introduction of the switched identity incident was reviewed under the palpable error standard. The Supreme Court noted that Curry had not "specified that there is any possibility, let alone a substantial one, that the result would have been different if evidence of one additional incident of untruthfulness by Anderson had been admitted." *Curry*, 2016 WL 669364, at *3. Trial counsel obtained an admission from Anderson that he was a convicted felon and asked Anderson about an incident when "he had lied about falling from a jailhouse bunk bed, which Anderson admitted." *Id*. Additionally, trial counsel "put on evidence that Anderson's version of the night's events changed a number of times." *Id*. Moreover, trial counsel called Lipfird as a witness who testified that Anderson had a poor reputation in the community for truthfulness. In light of the trial court's preliminary ruling that it would not permit counsel to question Anderson about the switched identity incident and the

significant evidence concerning Anderson's lack of credibility, trial counsel's decision not to pursue the matter was not ineffective assistance of counsel.

There is no basis to invoke the cumulative error rule in this case. As to the allegations regarding trial counsel's performance at trial, we conclude there are no grounds stated requiring an evidentiary hearing.

We conclude that Curry is entitled to an evidentiary hearing limited to his claims regarding trial counsel's advice regarding the Commonwealth's plea offer. As to those claims, we reverse and remand for appointment of counsel and an evidentiary hearing. On all other claims of ineffective assistance of counsel, the order of the Harlan Circuit Court is affirmed.

KRAMER, JUDGE, CONCURS.

DIXON, JUDGE, DISSENTS AND WILL NOT FILE A SEPARATE OPINION.

BRIEFS FOR APPELLANT:

J. Ryan Chailland
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky