RENDERED:  AUGUST 20, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0644-MR

JAMES K. BURCHFIELD                                              APPELLANT


APPEAL FROM BELL CIRCUIT COURT
v.          HONORABLE ROBERT V. COSTANZO, JUDGE
ACTION NO. 17-CR-00596


COMMONWEALTH OF KENTUCKY                                         APPELLEE


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  COMBS, KRAMER, AND L. THOMPSON, JUDGES.

KRAMER, JUDGE:  James K. Burchfield appeals a final judgment of the Bell

Circuit Court sentencing him consistent with a guilty plea he entered in this

criminal matter after denying Burchfield's motion to withdraw his plea.  The issue

presented involves Burchfield's contention that he was not provided exculpatory

evidence relating to one of the offenses to which he pled guilty until shortly *after*

he had already moved to enter his guilty plea and shortly before he was sentenced. He argues his counsel was ineffective for failing to inform him about the evidence in question (consisting of the results of a blood test that is not part of the record before us); failing to adequately explain the substance of his plea to him; and, primarily, for failing to advocate for him while he endeavored to withdraw his guilty plea. We agree, and therefore vacate and remand as set forth below.

The relevant facts are as follows. On or about August 22, 2017, Burchfield was arrested in Bell County following a traffic stop for (1) failure to give an appropriate signal when turning his vehicle, in violation of KRS[1] 189.380; (2) fleeing or evading police in the first degree, in violation of KRS 520.095; (3) possession of a controlled substance in the third degree, in violation of KRS 218A.1417; and (4) operating a vehicle under the influence of alcohol or drugs, in violation of KRS 189A.010. Notably, regarding this last charge, the citation indicated the "influence of alcohol or drugs" was "implied" due to what the arresting officer had observed of Burchfield during the arrest, but the citation bore the further notation, "blood pending."

On December 21, 2017, Burchfield was indicted in Bell Circuit Court for each of the above-mentioned charges and for being a persistent felony offender in the second degree in violation of KRS 532.080. Burchfield, who had remained

---

[1] Kentucky Revised Statute.

out of custody on conditional release, appeared in circuit court for arraignment on January 19, 2018 without counsel. There, he was advised of his charges; he entered a plea of not guilty; and a pretrial conference was scheduled for April 2, 2018. Burchfield also indicated he wished to have appointed counsel represent him and submitted an affidavit of indigency for that purpose. Afterward, the circuit court entered a January 29, 2018 order reciting these facts. Through its order, the circuit court also appointed the Department of Public Advocacy (DPA) to represent Burchfield and directed the Commonwealth's Attorney to "furnish to counsel for the Defendant all discovery required by law[.]"

But, the record provides no indication that DPA ever represented Burchfield later that year or even the next. Burchfield failed to appear for the April 2, 2018 pretrial conference. The bench warrant that was issued for his arrest, due to his missed court date, was not executed and served upon him until January 14, 2020. Thus, when Burchfield made his next appearance in circuit court on the morning of March 2, 2020, well over two years had elapsed since the dates of his arrest and arraignment. With that said, the purpose of Burchfield's appearance on March 2, 2020, was to review an offer from the Commonwealth: The Commonwealth would dismiss Burchfield's charge relating to KRS 189.380; Burchfield would plead guilty to the remaining charges; and the Commonwealth

would recommend a total sentence ultimately amounting to six-months'

imprisonment and five-years' probation.

Later that afternoon, Burchfield accepted the Commonwealth's offer

in writing; he filed an AOC-491 motion to enter a guilty plea; and his motion

included, among others, the usual recitals that:

> 3.  I have reviewed a copy of the indictment and told my attorney all the facts known to me concerning my charges.  I believe he/she is fully informed about my case.  We have fully discussed, and I understand, the charges and any possible defenses to them.
>
> . . .
>
> 10.  I declare my plea of "**GUILTY**" is freely, knowingly, intelligently and voluntarily made; that I have been represented by counsel; that my attorney has fully explained my constitutional rights to me, as well as the charges against me and any defenses to them; and that I understand the nature of this proceeding and all matters contained in this document.

Burchfield then took part in a group *Boykin*[2] inquiry[3] before the circuit

court, where he and five other defendants from unrelated cases, while lined up in

---

[2] *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

[3] Burchfield does not take issue with the adequacy of the circuit court's *Boykin* inquiry; and, the practice of addressing multiple defendants together does not, in and of itself, offend the requirement that courts address defendants personally during guilty pleas for *Boykin* purposes. Indeed, the validity of a guilty plea must be shown from the totality of the circumstances, and no "magic incantation" is required to show compliance with *Boykin*.  *Kotas v. Commonwealth*, 565 S.W.2d 445, 447 (Ky. 1978); *see also Commonwealth v. Fugate*, 527 S.W.3d 43, 45-47 (Ky. 2017) (explaining defendant's prior guilty plea, which he had entered with a group of other defendants after "the district court recited the constitutional rights and explained briefly the

front of the bench, were directed to answer questions to demonstrate their respective guilty pleas were knowing and voluntary. There, through his colloquy with the circuit court, Burchfield affirmed what he had attested to in his AOC-491 motion – and specifically that he understood the specifics of his plea agreement and had reviewed the evidence which the Commonwealth had against him. Considering Burchfield's plea, the circuit court ordered a presentence investigation (PSI) and directed final sentencing to take place on March 19, 2020.

However, on March 18, 2020, the Department of Corrections submitted a letter to the circuit court indicating that Burchfield had refused to complete his PSI paperwork while incarcerated in the Bell County Jail. On March 19, 2020, the circuit court then questioned Burchfield about it, and Burchfield requested that his attorney be permitted to help him complete the paperwork because he was having difficulty understanding it. After the circuit court granted his request near the conclusion of that hearing, the following exchange occurred between Burchfield's counsel, Burchfield himself, the Commonwealth's Attorney, and the circuit court:

---

consequences of pleading guilty to all who were present before it took up their individual arraignments[,]" was entitled to a presumption of regularity and was not subject to collateral attack). Nevertheless, this is not the preferred method: Certainly, there is a danger that any such procedure presents more difficulty for the court in ascertaining whether each individual plea was the product of misunderstanding or undue influence. We are keenly aware of the volume of criminal cases handled by district and circuit courts across the Commonwealth every day but urge the exercise of care to ensure due process is satisfied – especially when tedium and familiarity may set in.

COUNSEL:  Um, your honor, well I was gonna go ahead and file today for, he wanted to withdraw his guilty plea, but there's an addendum I gotta add to that motion, so I might as well just file a fresh motion.  One thing he had said, this is after the fact, but he said he hadn't gotten discovery in this case.  I didn't know that until after he had already entered the plea, when he called the office saying he wanted to withdraw his guilty plea.  So, I'll get his discovery over to him and maybe that, his mind will change when he reviews that or whatever.  Um –

COMMONWEALTH:  Let me put on the record that the Department of Public Advocacy received that discovery from the Commonwealth, fifteen pages, on the fourth day of January 2018.

COUNSEL:  So, I can't say, normally when I'm doing a case I turn over discovery right there at arraignment, so I can't explain why he doesn't have it or why he wasn't given it –

BURCHFIELD:  [Unintelligible], your honor.

COURT:  Well, I'll let you speak to your attorney, and I'll review the record before the hearing, but, uh, my recollection is that you stood before the court and I asked you if you had reviewed the discovery, the evidence against you, and you told me yes.  But I'm gonna let you discuss that with your attorney, and we'll be back on a new day.

To review, Burchfield wished to withdraw his guilty plea because "one thing" he had stated to his counsel, following his guilty plea, was that he had not been provided any of the evidence produced in discovery relating to his charges – a statement Burchfield's counsel could neither confirm nor deny.  The Commonwealth, for its part, could only assert that it had given DPA "fifteen

-6-

pages" of discovery "on the fourth day of January 2018" – *a date fifteen days before Burchfield had even requested DPA to represent him*, and (as later reflected over the course of the March 31, 2020 hearing set forth below) approximately two years before what DPA apparently acknowledged was the beginning point of its representation of Burchfield.[4]

Eventually, the circuit court considered Burchfield's motion during a March 31, 2020 final sentencing hearing. Before discussing the substance of that hearing, however, it is helpful for the sake of context to first review some of the law applicable to that phase of a criminal proceeding and relevant to this appeal. "[A] motion to withdraw a guilty plea made before entry of the final judgment of conviction and sentence is a 'critical stage' of the criminal proceedings to which the right to counsel attaches." *Commonwealth v. Tigue*, 459 S.W.3d 372, 384 (Ky. 2015). "The decision to seek to withdraw a guilty plea is not merely trial strategy, and cannot be made by counsel. If a defendant has entered a guilty plea and, before entry of final judgment, desires to seek to withdraw that plea, whether because it was allegedly entered in error, under duress, or other reason, he is entitled to the assistance of counsel in making such a request." *Id*. at 386. "[P]rejudice may be presumed, and a *per se* Sixth Amendment violation may thus

---

[4] As indicated below, during the March 31, 2020 hearing, Burchfield's counsel from the Department of Public Advocacy stated: "The thing is, we didn't originally represent him, your honor. He didn't have an attorney, and then he didn't appear for court."

be found, when there has been a complete denial of counsel . . . at a critical stage of the criminal proceeding, or when counsel is burdened by an actual conflict of interest[.]" *Id*. at 385 (internal quotation marks and citations omitted).

The crux of Burchfield's appeal is, as noted, his contention that he was not provided effective assistance of counsel in requesting the withdrawal of his guilty plea. Keeping that in mind, there is no indication from the record that Burchfield's counsel communicated with Burchfield, after the March 19, 2020 hearing, about the underpinnings of any motion Burchfield wished to file to withdraw his guilty plea; or that Burchfield's counsel did anything beyond, in his words, "get[ting] his discovery over to him [so] maybe that, his mind will change when he reviews that or whatever." That much is highlighted by the fact that Burchfield's counsel ultimately filed *no* motion to withdraw Burchfield's guilty plea; and, by the fact that when the circuit court revisited this matter on the "new day" (*i.e.*, during a March 31, 2020 teleconference with Burchfield for purposes of final sentencing), Burchfield's counsel did nothing to assist Burchfield in arguing it. Indeed, based upon the questions that he asked his client during that hearing, Burchfield's attorney apparently learned the specifics of Burchfield's motion for the first time as that hearing progressed.

To fully analyze this appeal, it is critical to have a full understanding of what was said; what was left *un*said; and the nature of counsel's advocacy

during the March 31, 2020 hearing.  Accordingly, we set forth the dialogue in the

hearing in its entirety:[5]

> COUNSEL:  With, withdrawing his guilt, trying to withdraw his guilty plea.[6]  Hey, James.  How are you doing?
>
> BURCHFIELD:  Hey, sir.
>
> COUNSEL:  Have you had a chance to review the discovery?
>
> BURCHFIELD:  Yes, sir.
>
> COUNSEL:  Alright.  Now, you had talked to me last time we were in court about asking to withdraw your plea.  Do you still want to do that?
>
> BURCHFIELD:  Yes, sir.
>
> COUNSEL:  Okay.  What reasons do you have for wanting to withdraw your plea?
>
> BURCHFIELD:  Uh, for one, uh, I hadn't read, I was going through my motion in discovery and I noticed where, uh, my test had come back negative on my DUI charge, and [unintelligible] while everyone was reading out, uh, I didn't understand it, and I didn't understand all of it while you all was reading it to me, the other lawyer, whoever it was?
>
> COUNSEL:  Yes.  Mr. Martin.

---

[5] Grammatical errors in the original dialogue have not been corrected or otherwise noted.

[6] The March 31, 2020 hearing was held via teleconference:  Burchfield communicated through a video feed from the Bell County Jail, while his attorney, the Commonwealth's Attorney, and the judge communicated to him through a video feed from the courtroom.  Burchfield's counsel had already begun speaking and was mid-sentence when the video feed began recording.

BURCHFIELD:  Okay.  Yes, I asked him to keep, to read over it, and I didn't understand, like, where they had, uh, the other cases, like back in 2008 and nine, over there.  And, um, actually there was [unintelligible] other reasons why, but I forgot, to tell you the truth.  My mind's kind of like blank, uh, I wasn't able to write them down.  I didn't have nobody to write them down for me.  Uh, I kind of forgot what they was, to tell you the truth, the other reasons, when I was going over the motion in discovery and stuff.

COMMONWEALTH:  Judge, can I see the court's file on him?

COUNSEL:  So James, I know the main question that the judge would have for you is, if you didn't understand what Andrew, Mr. Martin, was trying to explain to you about your offer of plea and your motion to enter a guilty plea, why didn't, when you came up on here, why didn't you tell the, before your plea, why didn't you tell the judge and, and say "Judge, uh, I had this read to me but I don't understand, I don't understand it, I need it explained better to me?"

BURCHFIELD:  Uh, well like I was telling you with the other things, the, uh, about the PFO II thing, I really didn't understand it, and I didn't know, like, what it was until actually I got back over here to the jail and, uh, some of the inmates over here was telling me what it actually was.  You know what I mean?

COUNSEL:  Okay, what, what do you mean, "what it actually was?"

BURCHFIELD:  Like the, how it like enhances, and like how it does the math and all that.  Because I got, uh, proof from where the, uh, like I was telling you at court that day, I got proof from where the, I jumped the car and I got [unintelligible] –

-10-

COURT:  – what I'm looking at here [unintelligible] records show [unintelligible] twenty years up?[7]

BURCHFIELD:  – the car, but I was just trying to get, uh, I was trying to get it over and trying to get it behind me to move forward, but I didn't realize how serious the charges actually was.

COURT:  – I mean, are you at the office?

COMMONWEALTH:  So, you're not denying that you committed the charges.  You just don't want to plea.

BURCHFIELD:  No, I'm not, I, yeah I'm denying, I admitted the charges.  That's –

COURT:  [Unintelligible.]

BURCHFIELD:  – what, what I'm saying, I have, I have, I have, I have proof that the car was scrap because the [unintelligible] on the car, I have receipts from the [unintelligible] from wherever they [unintelligible] the car, and [unintelligible].

COMMONWEALTH:  But on that day, the judge asked you, on that day the judge asked you if you had a chance to review your discovery, did he not?

COUNSEL:  No, he had no chance to review it that day.

BURCHFIELD:  Yeah, but I didn't understand it.  That's what I'm saying –

---

[7] When the circuit court stated, "What I'm looking at here [unintelligible] records show [unintelligible] twenty years up," it was in relation to another unrelated conversation it was having off-camera, apparently over the telephone, during the hearing.  It is unclear when the circuit court's unrelated conversation began, but it is apparent from the record that it continued until the circuit court eventually stated, "Okay.  Alright, just wanted to make sure.  Thank you.  Hold on.  Alright."

COMMONWEALTH:  But, judge asked you if you'd reviewed everything, and he said yes.  And now, just 'cause he's not happy with it, he's wanting to back out.  That's not how it works.

BURCHFIELD:  It ain't because I ain't happy with it.  It's because it's not true.  That's just like the DUI test in there –

COURT:  [Unintelligible.]

BURCHFIELD:  – that they charged me with DUI, and then they got me [unintelligible] plead to a fourth offense DUI which was enhanced.

COURT:  Twenty-nine days.  Um, [unintelligible.]

BURCHFIELD:  Uh, it states, it shows right there in the motion for discovery y'all [unintelligible].

COURT:  Um, it is, it is in a class [unintelligible].

COMMONWEALTH:  [unintelligible] and now he don't get a choice.

COURT:  [Unintelligible] twenty-nine days.  Okay.  Alright, just wanted to make sure.  Thank you.  Hold on.  Alright.[8]

COUNSEL:  James, you realize that if the judge allows you to withdraw this plea, what would happen is you would face a trial on this.  If you were convicted, then it would be whatever sentence the jury recommended, uh, for you.  And that would be jail time.  You understand that?  Can you hear me?

BURCHFIELD:  Uh, I caught some of, I caught some of it but you cut out there towards the end.

---

8 *See supra*, Footnote 7.

COUNSEL: Alright, let me do it again. You realize that if the judge allows you to withdraw the plea, and you had a trial, and you were convicted on the felony charges, that you would face serving a lot longer jail time, conceivably?

BURCHFIELD: Yes, sir.

COMMONWEALTH: Judge, this is Commonwealth's response. He's stated [unintelligible] his attorney that he didn't want to do it. Now, because when he got to the jail, apparently the jailhouse lawyers there has told him how serious in fact it is, uh, because he pled to a PFO. That is not grounds for him to be able to withdraw his plea. He's gotta show that he was of the [unintelligible] mind, that he was incapacitated that day, those things, and he has not proven any of that other than that he's now changed his mind.

COUNSEL: The only thing I would say is that he did say that he didn't understand the plea and the motion to enter a guilty plea and the offer.

COMMONWEALTH: It was explained to him that day, and he stood up here and understood it. And there's been statements that Andrew Martin's the one that went over it, but Andrew Martin's isn't the signature on that offer of plea as his attorney.

COURT: Alright. The times aren't the only things that are very unusual these days. Alright, Mr. Burchfield, having, uh, reviewed the record, heard your motion to withdraw your plea of guilty, the court is gonna have to deny that. When you were in court the last time –

BURCHFIELD: Um, excuse me, your honor –

COURT: – we went through a colloquy of, of a bunch of questions and I asked you if the plea was voluntary, if

-13-

you understand what you're doing, have you discussed it with your attorney, you said "yes," you said you were satisfied with the advice of your attorney, you said yes –

COUNSEL: I'm not sure he can hear.

COURT: Can you hear me Mr. Burchfield?

BURCHFIELD: I can't hear you. No. Uh, your honor. There you go. Uh, your honor, uh, one of, uh, like I was stating to my, uh, lawyer, like Karen Greene Blondell[9] stated, she stated last time that she already had my motion, that she didn't understand why I didn't get it. If she already had my motion, then she done knowed that I wasn't guilty on the DUI charge. And she done knowed that, uh, that my test came back clean. So, why would she have me, why was she trying to make me take a plea of twelve years, er, of twelve months in Bell County Jail and then six months on it if she done knowed all this? I mean, if you're supposed to be a lawyer, you're supposed to be, you know I mean, treating each other equal, and supposed to be standing up for me and fighting for me, then my lawyer shoulda knowed it, and she shoulda knowed it, and he shoulda said, "Well, we shouldn't take, we shouldn't set this plea, because I have, I have seen, whatever, your motion, and it states right there in your motion that you are not guilty of the DUI charge. You know, it should be, we need to go ahead and have this here taken off here, and then we'll proceed to merits, and the court takes it to trial. Just like Karen Greene stated that she, she hadn't [unintelligible] received this motion in discovery. And it says right there in the motion in discovery that the DUI test was clean, negative.

COURT: As I recall –

---

[9] Karen Greene Blondell was, as this colloquy tends to reflect, the prosecuting attorney in this matter at all relevant times.

BURCHFIELD:  I'm just not gonna, I just want [unintelligible] –

COURT:  As I recall, I asked if you'd reviewed the evidence that the Commonwealth had against you, and you said "yes."

BURCHFIELD:  I didn't understand it, your honor.  I swear I didn't.  Uh, I didn't receive my motion, I, I thought the papers she had in front of her that day that she was showing me was the motion.  Uh, [unintelligible] all I'm asking for is just a fair trial.  I mean, that's it.  Um, I'm trying to get my trucker license, and [unintelligible] I'm trying to get my trucker's license and I can't get that with that on my record.

COMMONWEALTH:  Well, that shouldn't be the only thing, he's got five other felonies he's been convicted of.

COURT:  In addition to this indictment?

COMMONWEALTH:  Oh yeah, he has a long criminal history.  If you look at it, it shows all the other felonies he's been convicted of.  This isn't his first go-round.  Although he wants to sit here and act like he doesn't know motions in discovery and all these things, it's not his first go-round by no means.

BURCHFIELD:  Yes, it is, as far as, as far as like in this case.  I had a lawyer, I had a paid lawyer the last time, I didn't say nothing.  He, he pretty much, he actually went over it and reviewed all my evidence, and actually, uh, updated me on everything that was, that needs to be and stuff.  I didn't actually have to deal with the motion in discovery and stuff myself.  I had somebody who actually went over all of it before I even appeared in my first, my first court appearance, and actually stated to me everything that was in it and stuff when I pleaded to it.  Uh, this is the first time, I've never done any of this.

-15-

COMMONWEALTH: He stood here in court and said he had reviewed it, and that his job, that the attorney had done a good job, and that he entered –

BURCHFIELD: I didn't say nothing about my attorney doing a good job.

COMMONWEALTH: You can speak when I'm done.

BURCHFIELD: Oh. My, my bad.

COMMONWEALTH: And that he was making it freely and voluntarily. And even today, he didn't deny that he did it, didn't do it –

BURCHFIELD: Yes, I did.

COMMONWEALTH: Instead, he said that he didn't realize how serious the PFO was until he got back, and he talked to those at the jail, and then he chose that he didn't want the plea. That is not grounds to set aside a plea.

COURT: Um –

COUNSEL: The thing is, we didn't originally represent him, your honor. He didn't have an attorney, and then he didn't appear for court. So.

BURCHFIELD: And that's only because I called and asked 'em to reschedule my court date because I missed it, and the court-appointed attorney said they couldn't reschedule my court date because I had two court dates back to back and I didn't realize that I'd missed it, and two days later I called in to the court-appointed attorney's office and they said the only way they could reschedule my, get the judge to reschedule my court date was if they was a death, an immediate death in the family or if, uh, I can show proof that I was in the hospital, and I couldn't do it. And that was the reason why I didn't

appear. But if you go back in my record, you'll see, your honor, that I have appeared at every court date that I've ever had in my life. I even showed up for my final sentencing and turned myself in when I [unintelligible]. I ain't never tried to run from nothing I've had against me.

COURT: Well, let me ask you a few questions, Mr. Burchfield. When you appeared in court for your final sentencing, you recall if I asked you if your plea was free and voluntary, and you told me yes. I asked you if your judgment was impaired in any way, and you told me it was not. I asked you if you'd discussed this with your attorney, and you told me that you had. I asked you if you were satisfied with the advice of your attorney, and you told me that you were. Um, you told me that you'd reviewed the evidence that the Commonwealth had against you, and we went through several, uh, several other questions and um, uh, at that time you indicated that the plea was free and voluntary, you knew what you were doing, that's what you wanted to do. I see here, been going back through the file, looking, and even on the Commonwealth's offer on a plea of guilty, that sets forth what the agreement is, it bears your signature, uh, as well as your attorney and the Commonwealth's. An agreement was made. Having heard the arguments, I just find no legally sufficient grounds to set aside the agreement that you made and which you entered in this court a few weeks ago. So, motion to withdraw plea will be denied, we'll proceed to final sentencing. The sentencing, madam clerk, will begin with dismissal of count one of the indictment. Uh, be five years in the penitentiary under count two, that the sentence under count two be enhanced by a plea of guilty to count five of the indictment. Twelve months in the Bell County Jail under count four. Thirty days in the Bell County Jail and a $200 fine under count three. That said sentences run concurrently with each other, that shall run consecutively with 09-CR-94, 09-CR-33, and that defendant actually serve six months –

BURCHFIELD:  But your honor –

COURT:  – with the remainder being probated –

BURCHFIELD:  What about the [unintelligible]?

COURT:  – six months' probation.  For a period of five years under count two of the indictment.  Credit for time served, seventy-nine days.  Court costs of $188.50.  Pay in full within ninety days of release.

BURCHFIELD:  But your honor?

COURT:  Yes, sir.

BURCHFIELD:  Excuse me.  Excuse me, your honor.

COURT:  Go ahead.

BURCHFIELD:  I, like I stated, I didn't understand.  I thought the motion in discovery was the paperwork that, that Karen Greene had.  I didn't understand that this here was my motion in discovery.

COURT:  Well, I'm not –

BURCHFIELD:  I, I didn't understand that this is what I was supposed to get.  Um, I didn't understand that I had a DUI that, I had, my DUI was clean, that I, I didn't understand all that.  I thought the paper, I thought the discovery was what Karen Greene had in her hand that day.

COURT:  I, I don't know anything about your "motion for discovery."  What I'm looking at, Mr. Burchfield, is the Commonwealth's offer on a plea of guilty, which sets forth just the sentence that I imposed.  And it's signed by you, signed by your attorney and the Commonwealth.  When you appeared in court, and I went through all those

-18-

questions with you to make sure you knew what was going on –

BURCHFIELD:  [Holds up to the video camera what appears to be a toxicology report that is not of record.]

COURT:  – So, and you answered "yes" to all the questions –

BURCHFIELD:  You see?

COURT:  – and that the plea was free and voluntary and what you wished to do.  So, with that having been –

BURCHFIELD:  But, but it wasn't.  I didn't understand it, your honor.  I thought the motion in discovery, I swear to you, your honor.  I thought the motion in discovery was what Karen Greene Blondell had in her hand that day.

COURT:  Uh, I don't, I don't.  I don't know what you thought anybody, but again, I'm just going by your statement that, I'm going, looking at the agreement that you signed.  You, your attorney signed, and the Commonwealth, which made the basis of the agreement [unintelligible].

BURCHFIELD:  But I, but I wanted, can I fire my attorney and seek for another attorney?

COURT:  Um, well, we're kinda beyond that.  Uh, the court finds that [unintelligible] –

BURCHFIELD:  So, I can't fire my attorney?

COURT:  – the plea was free and voluntary, and –

BURCHFIELD:  Well, but it wasn't.  I didn't understand it.

COURT: Well, you, you signed that you did and you, and you, when you were before the court –

BURCHFIELD: But I didn't, your honor.

COURT: – we went through the questions and, uh, you told me that you did.

BURCHFIELD: I, I didn't understand it, I swear I didn't.

COURT: I don't know what to say about that. That's –

BURCHFIELD: I did not.

COURT: You, you told me that you did, before the court.

BURCHFIELD: Please give me a chance. Please give me a chance, your honor, to at least defend myself. I'm asking for the court's mercy. I mean, at least give me the chance to defend myself. At least give me a chance to get a fair trial. I swear to you, I didn't understand it. And that's all, that's all I'm asking, your honor. I, I don't understand it.

COURT: I, I don't know what you didn't understand when you signed this agreeing to –

BURCHFIELD: [Unintelligible]. My bad. Go ahead, your honor. I didn't mean to cut you off.

COURT: Your, your signature is right here. You see that?

BURCHFIELD: Uh, when that lawyer came –

COURT: No, no, I don't want to hear what you said from your attorney. But when you stood before me, first of all you signed this, stating the terms that we just, uh,

articulated, that you would get five years, uh, in Bell County Jail –

BURCHFIELD:  I didn't understand it.

COURT:  – $200 fine.  Uh, serve six months, and the balance probated.

BURCHFIELD:  Well, it's also got on there about, and it's also got on there about a DUI charge that I had no knowledge of that they had the test results on, that stated I was innocent, that I was not impaired, which my lawyer should've brought to me that day and told me, that they had my motion in discovery since 2017, my lawyer should've brought it to my attention and told me, "Hey look, I have your motion in discovery over here, I have in front of me, uh, paperwork stating that you're, uh, blood test come back negative, you was not impaired or nothing –

COUNSEL:  Just because your blood test came back negative doesn't mean you're not necessarily impaired, James.

BURCHFIELD:  I wasn't impaired.

COUNSEL:  That's what a jury would have to go ahead and decide.

BURCHFIELD:  But I wasn't impaired, and you didn't tell me that, and she didn't tell me that, Karen Greene didn't tell me that.  She told me twelve months, and sixty days, or six months in Bell County Jail for a fourth offense enhanced DUI charge, that, which I won't be able to get my trucking license –

COUNSEL:  It's not a fourth offense DUI.

BURCHFIELD:  It's a first offense, but she said she was gonna –

-21-

COUNSEL:  It's a first offense DUI.

BURCHFIELD:  But she said she was enhancing it to, like, a fourth offense DUI –

COUNSEL:  No, no, no.  The enhancement you have on you is for, for the, uh, fleeing and evading.

BURCHFIELD:  Well, like I said, your honor, that I didn't know.  I mean, my lawyer shoulda brought it to my attention then, and then I wouldn't, we wouldn't, I wouldn't be in this situation right now if my lawyer woulda brought it to my attention and Karen [unintelligible], you know, if he had my motion in discovery like Karen Greene says she's had since 2017, then why try to railroad me and try to give me twelve months, and six months on, uh, DUI charge that you know that I'm innocent of?

COMMONWEALTH:  What's interesting is that you're only arguing the DUI.  You're not arguing the felonies.

BURCHFIELD:  I'm arg– I'm arguing, yeah I'm arguing the felonies.

COMMONWEALTH:  Just a minute.  You have the right, when this is done, to talk to a private attorney.  You have that right.  No one's stopping you.

BURCHFIELD:  I'm –

COMMONWEALTH:  But as for today, he's entering that judgment.

BURCHFIELD:  I'm just asking, your honor, please, please work with me and allow me to withdraw my plea at this time so I can proceed forward and try to seek another lawyer to, to better represent me.  Somebody

who's actually gonna fight for me and stand up, and let me know what's [intelligible] –

COUNSEL:  Mr. Burchfield, I told you, I told you at the time we entered the plea –

BURCHFIELD:  You never told me about nothing –

COUNSEL:  – that we didn't have to enter a plea that day, that we could take the case, set the cases down for trial, or set the case down for trial and take it to trial, and I said it was entirely your decision.

BURCHFIELD:  But, wait.  You never, you never told me about no motion in discovery.  You never told me I had no motion in discovery, I would need it –

COUNSEL:  Mr. Burchfield, you never said that you, you never asked me or anyone, uh, about that you didn't have your discovery.

BURCHFIELD:  [Unintelligible.]  You knowed about a motion in discovery.  I didn't know about it.  I thought what Karen Greene had in her hand was the motion in discovery and the judge stated there was a different motion in discovery that I had out there that I didn't know about –

COURT:  Alright, under normal circumstances, since we're forced due to the COVID to do this by video, I usually don't like to hear conversations between, uh, client and attorney.  Uh, but, I'm looking at the facts, not what somebody thought or what you thought somebody said.  You voluntarily signed this agreement on the Commonwealth's offer on a plea of guilty.  And I went through the questions to make sure, the court wanted to make sure that you understood what was going on, you told me –

BURCHFIELD:  But I don't understand –

-23-

COURT: So, there being no legal, uh, ground to find otherwise –

BURCHFIELD: But, that the lawyer not, the lawyer not presenting my motion in discovery told me, and stating to me that I have a DUI charge with me, against me, that's, that I'm not guilty of, that's not lawful grounds?

COURT: Again, Mr. Burchfield, I'm going by what you agreed to and you signed the agreement to enter, that –

BURCHFIELD: I didn't have it, your honor. I didn't have the motion, I didn't understand it. I swear I didn't understand it.

COURT: Okay. I don't know, you keep going back to a "motion for discovery." That's, that's not before the court. I have no idea what you're talking about on that. But what I'm talking about is –

BURCHFIELD: That's what I'm saying. I didn't get it.

COURT: – did the court ensure that this plea was free and voluntary by the series of questions that it asked you. At no time did you indicate, uh, otherwise.

BURCHFIELD: Yeah, I, I have stated that I didn't know. I didn't have [unintelligible].

COURT: I don't, I don't know what you didn't know when you signed, when you stood before the court and told me that this is your understanding and this is what you wanted to do, that you wanted to enter a plea of guilty, that it was free and voluntary, and you discussed it with your attorney, and you were satisfied with the advice of your attorney –

BURCHFIELD: I wasn't.

-24-

COURT: – that you had reviewed the evidence the Commonwealth had against you. So, I don't know. Without there being sufficient legal grounds to set this plea aside –

BURCHFIELD: But they are.

COURT: Well, there's not. And –

BURCHFIELD: There are. The, the lawyer didn't tell me that I had a motion in discovery out there.

COURT: – be credit for time served, [unintelligible] days, court costs of $188.50, pay in full at the end of ninety days from your release.

From a fair reading of what is set forth above, Burchfield appears to have offered at least two arguments for withdrawing his guilty plea. First, he contended it was involuntary[10] due to ineffective assistance of counsel. *See Commonwealth v. Pridham*, 394 S.W.3d 867, 874 (Ky. 2012) (explaining a plea is involuntary if the facts alleged, if true, "would render the plea involuntary under the Fourteenth Amendment's Due Process Clause, would render the plea so tainted by counsel's ineffective assistance as to violate the Sixth Amendment, or would otherwise clearly render the plea invalid."). In that vein, he asserted not only that

---

[10] If a defendant presents at least "a colorable argument before a trial court" that his guilty plea was involuntary (*i.e.*, an argument free of allegations that are inherently unreliable, unsupported by specific facts, or which provide no grounds for withdrawal even if true), an evidentiary hearing is generally required – even if the defendant previously indicated the voluntariness of his guilty plea during a *Boykin* colloquy. *See Zapata v. Commonwealth*, 516 S.W.3d 799, 801-02 (Ky. 2017). Here, due to our resolution of this appeal, it is unnecessary to resolve whether Burchfield's argument entitled him to an evidentiary hearing; rather, it is enough to note that the March 31, 2020 hearing certainly did not qualify as one: No evidence was considered, nor was anyone placed under oath.

his counsel had failed, prior to his guilty plea, to provide him an opportunity to review any of the Commonwealth's evidence against him (*i.e.*, what he referred to as his "motion in discovery"), but also that part of that evidence (*i.e.*, his negative result on a blood test) was exculpatory with regard to one of his charges.

Second, Burchfield repeatedly asked the circuit court to exercise its discretion to *allow* him to withdraw his guilty plea because, as he represented, he had not understood what he was doing at the time. *See Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky. App. 2004) (explaining RCr[11] 8.10 permits the trial court to exercise its discretion to allow the withdrawal of a voluntary plea).

Nevertheless, when the circuit court entered final judgment in this matter on March 31, 2020, its judgment bore no indication that Burchfield had moved to withdraw his guilty plea at all, merely stating: "The Court, after a colloquy with the Defendant, determined that the plea was voluntary"; that "[n]o sufficient cause [had been] shown why judgment should not be pronounced"; and that the circuit court, having been "sufficiently advised" had sentenced Burchfield consistent with the terms of his guilty plea.

As stated at the onset of this Opinion, Burchfield's sole argument on appeal is that he was denied effective assistance of counsel in attempting to withdraw his guilty plea and that he should accordingly be provided another

---

[11] Kentucky Rule of Criminal Procedure.

opportunity to relitigate this phase in his proceedings. We agree.[12] As noted,

when Burchfield sought to withdraw his plea at the sentencing hearing, he was

already at a disadvantage: Contrary to what was promised on March 19, 2020,

Burchfield's counsel never filed any formal motion to withdraw Burchfield's

guilty plea prior to the March 31, 2020 hearing. His counsel apparently learned,

for the first time during that latter hearing, what Burchfield's reasons for wanting

to withdraw his guilty plea were. Indeed, to the extent Burchfield's counsel

participated at all at the March 31, 2020 hearing, his participation was *mostly*

limited to: (1) questioning Burchfield about why Burchfield wished to withdraw

his guilty plea; (2) warning Burchfield about the consequences of doing so; and (3)

informing the circuit court, "The only thing I would say is that he did say that he

didn't understand the plea and the motion to enter a guilty plea and the offer."

The *remainder* of what Burchfield's counsel did over the course of the

hearing, however, was even less helpful. For example, rather than advocating that

Burchfield's non-receipt of discovery served as a basis for withdrawing his client's

---

[12] Burchfield requests palpable error review of this argument, which is appropriate if the error in question, despite being unpreserved for appeal, is one that affects the "substantial rights" of the party and results in "manifest injustice." RCr 10.26. Initially, we disagree that this argument was not preserved below: Burchfield specifically asked if he could "fire" his counsel for failing to properly explain the implications of his guilty plea; failing to apprise him of what he regarded as exculpatory evidence; and for failing, in his view, to adequately represent his interests during the March 31, 2020 hearing. Were it otherwise, however, we would nevertheless address this argument under the palpable review standard because our courts have done so on other occasions. *See, e.g.*, *Sturgill v. Commonwealth*, 533 S.W.3d 204, 211 (Ky. App. 2017); *Zapata*, 516 S.W.3d at 803.

guilty plea, Burchfield's counsel instead blamed Burchfield for not speaking up about it earlier; he undercut his client's position that a "blood test [that] came back negative" would be particularly convincing evidence in a jury trial; and he emphasized that pleading guilty had been "entirely" Burchfield's decision.

And that, in turn, hits at the heart of this matter; namely, what was left *un*said during the March 31, 2020 hearing, and indeed throughout these proceedings:  The record fails to demonstrate Burchfield's counsel ever *advocated*, consistently with Burchfield's wishes, withdrawing his client's guilty plea.  In *Zapata v. Commonwealth*, 516 S.W.3d 799 (Ky. 2017), the Kentucky Supreme Court reiterated its position in *Tigue* that "counsel's refusal to assist a client, at least in some circumstances, has the same effect–a complete denial of counsel–as counsel's physical absence or being prevented from assisting."  *Zapata*, 516 S.W.3d at 802 (quoting *Tigue*, 459 S.W.3d at 385).  "To stand silent and refuse to act on a decision that is personal to the defendant is no different than not being present at all.  It is a complete denial of counsel."  *Zapata*, 516 S.W.3d at 802 (quoting *Tigue*, 459 S.W.3d at 386).

Here, considering what is set forth above, Burchfield's counsel *at best* stood silent and refused to act upon his client's decision to withdraw his guilty plea.  Accordingly, Burchfield's right to counsel at a critical stage in the proceedings was violated.  Thus, following the directive of *Tigue* and *Zapata*, we

"rewind this matter to the point in time when [Burchfield] had already entered his plea but before he was sentenced." *Zapata*, 516 S.W.3d at 803 (quoting *Tigue*, 459 S.W.3d at 390). "[M]andating a hearing on remand is inappropriate. Instead, the appropriate remedy is to vacate the judgment but not, at this point, the guilty plea, and to remand for further proceedings as may be required, depending on the action of the defendant." *Tigue*, 459 S.W.3d at 390.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van de Rostyne
Assistant Attorney General
Frankfort, Kentucky