# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: JUNE 13, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0133-MR

ALEXANDRA RICHARDSON                                       APPELLANT

             ON APPEAL FROM EDMONSON CIRCUIT COURT
V.                HONORABLE TIMOTHY R. COLEMAN, JUDGE
                           NO. 19-CR-00168

COMMONWEALTH OF KENTUCKY                             APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Alexandra Richardson accepted a plea offer from the Commonwealth and pled guilty to murder, wanton endangerment in the first degree, and operating a motor vehicle under the influence. Prior to her final sentencing, Richardson moved the trial court to allow her to withdraw her plea. After a hearing, the trial court denied her motion and sentenced her to twenty years in prison consistent with the terms of the earlier plea agreement. She now appeals the judgment of the Edmonson Circuit Court. Upon review, we affirm the trial court.

**FACTS AND PROCEDURAL BACKGROUND**[1]

On December 2, 2019, Richardson was with her two children, I.R., age seven, and C.M., twenty-two months old, when she drove across a low bridge despite it being closed due to flooding. Her vehicle became inundated with water and all three were swept away by the high water. Neither Richardson, nor her children, knew how to swim, and she lost C.M. in the deluge. C.M. was later found deceased by first-responders. All others were rescued and Richardson later tested positive for marijuana and methamphetamine at the hospital.

On December 19, 2019, Richardson was indicted by a grand jury for murder, assault in the first degree, operating a motor vehicle under the influence, twelve counts of wanton endangerment in the first degree, possession of controlled substance in the first degree (methamphetamine), possession of marijuana and drug paraphernalia, and being a persistent felony offender (PFO) in the second-degree.[2]

A mediation was held on October 7, 2023. During the mediation, the Commonwealth gave a power-point presentation on why it believed its case was properly charged as wanton-murder. Richardson attempted to negotiate the charge down to manslaughter, but the Commonwealth held firm on wanton-

---

[1] The record in this case is rather sparse on the actual events and circumstances surrounding the charges.

[2] The predicate offenses for the PFO were criminal facilitation to manufacturing methamphetamine and controlled substance endangerment to a child in the fourth degree as contained in indictment number 15-CR-00086.

murder but did agree to the minimum on the murder charge. The parties came to an agreement to settle the case, dismissing all the charges except murder, driving under the influence, and wanton endangerment in the first-degree and agreeing on a twenty-year sentence.

Richardson entered her plea that day utilizing Zoom so that the Hon. Timothy Coleman could take her guilty plea. The trial court asked a series of questions of Richardson, including whether she needed more time to discuss the case with her attorney, whether she was satisfied with the performance of her attorney, and whether she understood the nature of the charges against her, and whether her attorney had discussed any potential defenses to them. She responded that she did not need any more time, she was satisfied with her attorney's performance, and she understood the charges and defenses to them. Richardson did inform the trial court that she had been diagnosed with bipolar disorder, post-traumatic stress disorder (PTSD), and obsessive-compulsive disorder (OCD). She added that she normally takes medication for these issues but had not taken them that day. The trial court then asked if her judgement was impaired or affected in anyway because of the lack of medication to which she replied in the negative. The trial court accepted her plea and set the case for final sentencing. After the plea hearing, Richardson wrote a letter to the trial court asking to withdraw her plea.

The trial court appointed new counsel for her who filed a written motion requesting that her plea be withdrawn on the grounds it was not knowingly or intelligently made. The trial court held a hearing in which Richardson was the

3

only person to testify. Richardson testified she did not understand the plea agreement. She also alleged that she never received all her discovery and even though she requested a mental-health evaluation her attorney did not have one performed. She testified that she was diagnosed with severe complex PTSD which causes flashbacks, numbing, overcompliance and memory problems. When she was being transported for the mediation, she alleged it caused her to enter a numbing stage. After she arrived for the mediation, she viewed the surveillance video of her stopping by a pharmacy with her now deceased child. She alleged this caused her to enter a disassociated state outside of herself and making her forget everything that happened afterwards. She was gripped in fear, coerced, and intimidated by her attorney who never informed her she was facing life in prison but told her that if she did not take this plea agreement the jury would give her a life sentence. She discussed her other mental illnesses, including obsessive compulsive disorder (OCD), and bipolar disorder. She went on to inform the trial court that in addition to these psychological ailments she also suffered from idiopathic intracranial hypertension which she claimed also affected her ability to make decisions. Her attorney asked why if she was having these types of concerns, she did not tell the judge when he asked if her mental health concerns impaired her judgment. She recalled being asked about any mental health concerns and telling the judge about them. She remembered being asked about medicines prescribed for them and telling the judge that she had not taken them that day. Richardson also remembered telling the judge that her judgment was not impaired despite her not taking her medication.

When her attorney asked her why she answered as she did, she replied that she did not realize how much she was affected by her PTSD in the moment, that she panicked, and her attorney told her to answer yes to all the questions. She reiterated her claim of innocence and insisted that she always wanted to take the case to trial.

Richardson was then cross-examined by the Commonwealth. She was asked what time she arrived for the mediation, and she agreed that she arrived at approximately 9 a.m. She remembered that she entered her plea around 1 p.m. She remembered that she was present with her attorney and investigator. She remembered that there was a retired judge assigned as a mediator to her case. At first, she denied remembering making a counteroffer for a plea agreement for manslaughter,[3] but after some prompting, she did recall doing so. When she was able to recall this the Commonwealth pointed out this was inconsistent with her now claiming she always wished to take her case to trial. She also remembered responding in the negative when the trial court asked her if she needed more time to speak with her attorney before moving forward.

After questioning Richardson, the Commonwealth informed the trial court that he was not aware that Richardson would make allegations against her previous attorney and requested to continue the hearing if the court thought it necessary to subpoena her original attorney. The trial court demurred and denied Richardson's motion based on her statements she made

---

[3] The record does not indicate whether Richardson's counteroffer was for manslaughter in the first degree or second, nor what term of years she was proposing.

during her plea colloquy. Richardson now appeals the trial court's denial. We now address the merits of her appeal.

## II.   ANALYSIS

The Due Process Clause of the Fourteenth Amendment requires that a trial court make a showing that a guilty plea be entered intelligently and voluntarily. *Edmonds v. Commonwealth,* 189 S.W.3d 558, 565 (Ky. 2006) (citing *Boykin v. Alabama,* 395 U.S. 238, 241–42 (1969)). RCr[4] 8.10 states, "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." A decision whether or not to grant a defendant's motion to withdraw a voluntarily entered guilty plea is within the sound discretion of the trial court. *Rigdon v. Commonwealth,* 144 S.W.3d 283, 288 (Ky. App. 2004). However, this Court has held that "the discretion to deny a motion to withdraw a guilty plea exists only after a determination has been made that the plea was *voluntary.* If the plea was *involuntary,* the motion to withdraw it must be granted." *Rodriguez v. Commonwealth,* 87 S.W.3d 8, 10 (Ky. 2002). A trial court's factual finding on the voluntariness of the plea will be reviewed for clear error while its determinations of law will be reviewed *de novo. Commonwealth v Pridham,* 394 S.W.3d 867, 875 (Ky. 2012).

Richardson argues that her plea was not voluntary because she had entered a disassociated state during the course of the mediation and subsequent plea colloquy. As such, she claims she did not understand what

---

[4] Kentucky Rules of Criminal Procedure

was happening. Richardson testified that she suffers from a panoply of mental health concerns. However, all the evidence of Richardson's mental health issues came in through her own testimony rather than an expert. She did not introduce any medical records to support her testimony. This Court cannot conclude that the trial court's decision was clearly erroneous when the only evidence regarding Richardson's mental health issues was her own lay testimony in which she contradicted herself numerous times.

For instance, she claimed she remembered nothing at all about the plea colloquy due to her disassociated state and yet when she was questioned by her own attorney, she recalled being asked numerous questions by the trial court. She remembered being asked if her mental health issues impaired her judgment that day; whether her not taking her medication that day impaired her judgment; and she was able to remember her response was that her judgment was not impaired at all. And when she was asked to explain why she answered so, she made several allegations against her previous attorney from memory. She alleged that her attorney coerced her to take the plea and told her to answer "Yes" to all the questions during the plea hearing. When she was questioned by the Commonwealth, she remembered important details from the day of the mediation and later plea hearing. She also directly contradicted her previous sworn testimony that she made during the plea hearing numerous times. This inconsistent testimony and selective memory, both within the context of the hearing to withdraw her plea and the earlier plea colloquy could certainly be viewed to undermine Richardson's credibility. And "[a]ssessing the

7

credibility of a witness and the weight given to her testimony rests "within the unique province of the jury [or finder-of-fact]." *Ross v. Commonwealth,* 531 S.W.3d 471, 477 (Ky. 2017) (quoting *McDaniel v. Commonwealth,* 415 S.W.3d 643, 654 (Ky. 2013)). The trial court overruled Richardson's motion stating that it relied on her sworn testimony she made during the plea hearing. Again, this Court cannot find that the lower court's ruling was clearly erroneous nor that it abused its discretion by denying Richardson's motion when she undermined her own credibility numerous times.

### III.    CONCLUSION

Based on the foregoing, we hold the trial court's decision was based on substantial evidence and did not abuse its discretion when denying Richardson's motion to withdraw her guilty plea. As such, we affirm the judgment of the Edmonson Circuit Court.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert and Nickell, JJ., concur. Thompson, J. dissents without opinion.

COUNSEL FOR APPELLANT:

Adam Meyer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General